Richard C. Osborne
1919 Pennsylvania Ave. N.W., Ste. 400
Washington, DC 20006
(202) 955-0095
*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FELLOWSHIP OF CHRISTIAN ATHLETES, et al.,<br>*Plaintiffs*,<br>v.<br>BOARD OF EDUCATION OF THE HOPEWELL VALLEY REGIONAL SCHOOL DISTRICT, et al.,<br>*Defendants*. | **Civil Action No. 3:26-cv-10163-RK-TJB**<br><br>**DECLARATION OF HARRY FLAHERTY** |

I, Harry Flaherty, pursuant to 28 U.S.C. § 1746, state and declare:

1. I am over eighteen years of age and competent to make this declaration.

2. I am the State Director for the Fellowship of Christian Athletes of New Jersey (FCA New Jersey). FCA New Jersey is part of the Mid-Atlantic Region of the national Fellowship of Christian Athletes organization (FCA National), and there are 170 FCA huddles throughout the state. My role as the New Jersey State Director involves working with and overseeing the efforts of the Multi-area Directors, Area Directors, Area Representatives, and Ambassadors within the State of New Jersey, including the FCA Area Director for Central Jersey West, Carolyn McDonough.

3. I graduated from the College of the Holy Cross, and I played football at both the collegiate and professional level. My vision for FCA is to see athletes and coaches rise up and become spiritual leaders in their community, using sports to influence the world for Jesus Christ.

4. I make this declaration based on 30 years' worth of personal knowledge and experience with FCA National and FCA New Jersey, my personal knowledge of the situations involving FCA Central and FCA Timberlane, and the documents reviewed in the course of my ministry with FCA. My statements about the history and characteristics of FCA National are drawn from personal experience and organizational documents. These organizational documents were prepared as a regularly conducted ministry activity by FCA staff who have knowledge of the data. And these documents are used by FCA in the normal course of its ministry.

**FCA National**

5. FCA National is a Christian ministry whose student-led clubs embrace both its "vision to see the world transformed by Jesus Christ through the influence of coaches and athletes" and its mission "to lead every coach and athlete into a growing relationship with Jesus Christ and His church." FCA National is a 501(c)(3) corporation and has been recognized by the IRS as a church.

6. FCA achieves its goals with steadfast commitment to Jesus Christ and His Word through its core values of Integrity, Serving, Teamwork, and Excellence.

7. FCA was founded in 1954 by Don McClanen, a basketball coach in Norman, Oklahoma, with the objective of reaching coaches and student athletes with the good news about Jesus Christ. Today, FCA has a significant international presence, and over 20,000 huddles, many of which exist on public university, college, high-school and middle-school campuses across the United States.

8. "Huddle ministry" has been a critical component of FCA's religious mission for nearly 70 years. Through their presence on school campuses across the country, FCA huddles have advanced FCA's ministry of "lead[ing] every coach and athlete into a growing relationship with Jesus Christ and His church." This campus presence has been essential to FCA's religious mission because it is the platform through which FCA reaches student athletes—exactly the audience FCA exists to serve. A true and correct copy of FCA's Vision and Mission Statement is attached as **Exhibit A**.

9. Given the importance of huddles to FCA's religious ministry, FCA devotes significant resources to them. For instance, FCA prepares and publishes resources (like the Huddle Playbook) to provide training and guidance to FCA's staff and FCA student leaders. In addition, FCA employs staff all throughout the country to support the huddle ministry. In New Jersey specifically, FCA employs two Regional Directors and five Area Directors who train and support FCA's student leaders.

10. Students are indispensable to FCA's huddle ministry. Indeed, FCA huddles are initiated and led by student athletes, and student leaders determine the content of the FCA huddle's message. For example, students lead the groups' religious meetings and Bible studies; lead and participate in prayer, worship, and religious teaching; help decide the religious content of the meetings; select guest speakers and identify religious topics to cover during events; minister to their peers individually; plan and schedule ministry events on campus; communicate FCA's Christian message when interacting with administrators, staff, faculty, and students at their school; and determine what kind of outreach and service activities to engage in to advance the group's religious mission.

11. Because student leaders are the primary embodiment of FCA's message, FCA considers its student leaders to be FCA Representatives—a designation they share with FCA's directors, officers, employees, and other volunteer leaders. FCA Representatives are an integral part of the FCA community. Indeed, their core function is to express, message, and model FCA's faith on behalf of FCA and their FCA club.

12. For all these reasons, it would undermine FCA's religious mission if FCA's student leaders didn't receive the proper spiritual and leadership training. Indeed, student leaders who cannot present a clear Christian message to the group's members and to the other students on campus cannot influence and lead fellow students "into

a growing relationship with Jesus Christ." Thus, simply put, it is crucial to the credibility and effectiveness of FCA National and of each FCA huddle's ministry that student leaders have the necessary spiritual and leadership training so that they can effectively share FCA's religious beliefs and conduct themselves appropriately as a Christian leader among their peers.

**FCA in Hopewell Valley**

13. There are two FCA huddles that currently operate within the Hopewell Valley Regional School District (the District): (1) FCA Central, which has been meeting at Hopewell Valley Central High School since 2010, and (2) FCA Timberlane, which has been meeting at Timberlane Middle School since 2024. Both huddles are student initiated and student led. And as with all FCA huddles, one of the primary objectives for these two huddles is to share with coaches and student athletes the good news that Jesus Christ offers new life to all people and to give them a greater sense of purpose in their athletics.

14. FCA Central and FCA Timberlane each meet during the lunch period at their respective schools. While FCA staff and volunteers have attended the huddle meetings at both schools—and have done so without issue for years—the students are the ones responsible for leading devotionals, prayers, and all other aspects of religious exercise.

15. Because, as discussed above, student leaders are critical to FCA's religious mission, it is essential to FCA that these student leaders be able to receive spiritual guidance from FCA's adult staff and volunteers. These adult staff members and volunteers can provide spiritual guidance and mentorship, answer questions, and assist in leadership development, all of which is necessary for young students to be able to lead an FCA huddle effectively.

16. It is vital that FCA's staff and volunteers be able to provide this spiritual guidance and leadership development on campus. First, school campuses provide a safe, convenient, and consistent space for FCA staff and volunteers to meet with both student leaders and members. In my experience, meeting in a separate, off-campus location would be difficult for middle-school and high-school students. Second, meeting outside of school hours is all but impossible for young student athletes trying to balance school, sports, church, and family obligations. And third, most—if not all—successful student groups rely on adults to help provide logistical support and continuity, given the obvious high turnover that student groups face as students graduate.

17. Until recently, FCA huddles at Hopewell Valley Central High School (FCA Central) and Timberlane Middle School (FCA Timberlane) were allowed to invite local FCA staff members and volunteers to attend their on-campus gatherings.

**Hopewell Valley's Religious Club Restriction**

18. On March 13, 2025, the Freedom From Religion Foundation (FFRF) sent a complaint to the District, alleging that "outside adults are being permitted to enter Timberlane Middle School to lead the school's chapter of the Fellowship of Christian Athletes." The letter further claimed that the District had been "giv[ing] outside religious representatives special access to students for the purpose of promoting religion and proselytizing students, including leading students in religious activities during school-sponsored club meetings." The letter then "ask[ed] that the District investigate and ensure that outside adults are not permitted to regularly lead, attend, or participate in student religious clubs." A true and correct copy of this letter is attached as **Exhibit B**.

19. Just eight business days later, on March 25, 2025, the District's Superintendent, Dr. Rosetta Treece, responded to FFRF through a letter sent by the District's outside counsel at the law firm of Schenck, Price, Smith & King, LLP. The letter explained to FFRF that "as a result of her investigation, Dr. Treece is directing the Timberlane Middle School Principal to immediately stop the direct involvement of any outside adults in the meetings of the Fellowship of Christian Athletes." A true and correct copy of this letter is attached as **Exhibit C**.

20. To my knowledge, no such investigation ever took place. I am not aware that Dr. Treece ever attended (or asked another District employee to attend) an FCA

meeting to corroborate FFRF's allegation that "outside adults" were "leading" the huddle. Nor I am aware that Dr. Treece (or any other District employee) ever discussed these allegations with either FCA Timberlane's student leaders or FCA's local staff and volunteers. If Dr. Treece had reached out to discuss FFRF's allegations at that time, my staff and I would have gladly clarified that all FCA huddles are student-initiated and student-led.

21. In August 2025, before the start of the next school year, FCA's Area Director, Carolyn McDonough, submitted her Hopewell Valley Regional School District Volunteer Form, which would have ordinarily allowed her to attend FCA meetings on the District's campuses.

22. Soon after she did so, though, the Principal at Timberlane Middle School, Christopher Turnbull, responded to inform Ms. McDonough that she would not be allowed on campus during the upcoming school year. That's because Dr. Treece and "district counsel" had instructed Principal Turnbull that "**no outside individuals are permitted**" for "religious clubs" because "the law stipulates that the students must run them" (emphasis in original). At the same time, however, Principal Turnbull acknowledged that FCA Timberlane would still be allowed to meet "this year because students drive the meetings." A true and correct copy of this email is attached as **Exhibit D**.

23. A few weeks later, on September 11, 2025, the Principal at Hopewell Valley Central High School, Patricia Riley, informed Ms. McDonough and FCA Central's faculty advisor, Susan Hart, that FCA Central also would not be allowed to invite outside visitors onto campus because it is a "religious club[]." In announcing the policy change, Principal Riley shared that she "appreciated the support" FCA's staff and volunteers had provided, and that she was "sorry the district is required to make this change." A true and correct copy of this email exchange is attached as **Exhibit E**.

24. Several days later, Ms. McDonough asked Principal Riley and Ms. Hart whether this restriction on religious clubs was "part of a policy for the school district" or whether it was "something new that ha[d] been added for this year." Ex. E at 4. Ms. Hart responded that "[f]rom what [she] can see," the new rule "singles out religious groups only." She continued, saying, "I have NOT heard of there being a single concern about FCA meeting on Thursday (and sharing, praying, and providing pizza and snacks) for the past 3 years. Had there been an issue, it would have been common courtesy to bring it to our attention." *Id.* Ms. Hart concluded by expressing her "hope" that the situation "can be remedied quickly and to the most benefit of our students and community." *Id.*

25. Ms. McDonough later contacted the District two more times, seeking clarification or a written policy explaining that all clubs—except for religious ones—may invite outside visitors onto campus.

26. While Ms. McDonough never received either from the District, she was able to meet with Principal Riley on October 7, 2025. It is my understanding that at that meeting, Principal Riley disclosed that three students in FCA Central had expressed their desire for FCA's staff and volunteers to be allowed to attend FCA's meetings. Principal Riley also confirmed that the school's Robotics Club would be allowed to continue inviting outside visitors because the Robotics Club was *not* religious.

27. Several weeks later, on October 13, 2025, the Hopewell Valley Board of Education held a school-board meeting. It is my understanding that during that meeting, an FCA student member and his mother asked the Board to allow FCA to host outside visitors again—as it does for every other club on campus. In response, Dr. Treece claimed that it would not be possible to do so because the District had been "served" with a "possible pending lawsuit" from FFRF. Dr. Treece stated that after receiving FFRF's letter, she had "reached out to [the] board attorney," who told her that "if this is happening, you have to cease and desist immediately."

28. Two weeks later, on October 28, 2025, Dr. Treece and Principal Riley met with Ms. McDonough and me to discuss the District's new religious-club restriction. While there, Ms. McDonough and I clarified the factual background underlying the

dispute and explained how the District's new prohibition on outside visitors for only religious clubs violated several federal and state laws. In response, Dr. Treece simply reaffirmed that outside visitors are allowed for secular student groups but not for religious student groups. Dr. Treece stated that she had been directed to take this position by the Executive County Superintendent, Dr. Daryl Minus-Vincent, and by the District's outside counsel at Schenck Price.

29. After the meeting ended, Dr. Treece emailed Ms. McDonough and I to provide us with a copy of FFRF's March 2025 letter. In doing so, Dr. Treece reiterated her position that "both the Board Attorney and the Executive Superintendent [had] confirmed that [the District was] out of compliance by allowing outside advisors/volunteers to come into our school for a *religious* club" (emphasis in original). She concluded by saying, "We value our students' involvement in FCA, and we all must ensure that we are following the expectations of the NJDOE to be able to continue sponsorship of the club." A true and correct copy of this email is attached as **Exhibit F**.

30. On October 30, 2025, I sent a letter to the District and Dr. Minus-Vincent, which provided a detailed background of this dispute and the legal reasons why the District's actions were unlawful and asked the District to reconsider its ban on outside visitors for religious clubs. A true and correct copy of this letter is attached as **Exhibit G**.

31. On November 10, 2025, Dr. Minus-Vincent responded to my email, explaining that "the issues … highlighted in [my] correspondence all appear to be issues that should be addressed by the Hopewell Valley Regional School District, its Board of Education, and its attorney in the first instance." Dr. Minus-Vincent therefore refused to "participat[e] in any discussions or meetings … concerning the resolution of this issue." At no point, however, did Dr. Minus-Vincent disavow Dr. Treece's statement that Dr. Minus-Vincent had directed her to ban all outside volunteers for religious clubs. A true and correct copy of this email exchange is attached as **Exhibit H**.

32. After almost three weeks had passed without hearing anything from the District, I emailed Dr. Treece on November 20, 2025, asking for a "response within the next week" given that "students' statutory and constitutional rights are currently being infringed." Ex. H at 1. On November 24, 2025, Dr. Treece responded, "I am not sure what response you are referring to. I am complying to the expectations for religious clubs. The district has given our position." *Id.*

**Final Efforts to Avoid Litigation**

33. Dr. Treece's November 24 email emphasized that the District had given its final position on the issue. But in a last-ditch effort to avoid litigation, FCA sent a letter to the District and Dr. Minus-Vincent on December 19, 2025, which asked the District to reconsider its restriction on religious clubs.

34. In our letter, we explained how the District's religious-club restriction violated the First Amendment and the Equal Access Act by singling out FCA as a religious club and making its students alone unable to host adult guests.

35. On January 15, 2026, the District's counsel, Mr. Paul Green, responded, letting us know that he would "review [FCA's] correspondence" and "be in touch in the near future."

36. In the end, however, and despite repeated follow-ups, Mr. Green never responded to FCA's letter.

37. Because of the District's unlawful discrimination against FCA, I have had to divert a substantial amount of time that I would have spent on my core job responsibilities to address the impact that the District's actions have had on FCA's religious mission. I estimate that I have spent at least 50 hours working on matters related to the District's discrimination against FCA, including in participating in the meetings with District employees, submitting a letter requesting the District to reconsider its discriminatory policy, and handling numerous phone calls and meetings with my staff and superiors dealing with the fallout and harm of discrimination.

38. My normal job responsibilities entail providing supervision, guidance, and religious support to my field leaders so that they can accomplish FCA's religious mission. Until the District adopted its discriminatory restriction for religious clubs, I

had never had to work on any of the types of tasks listed in the paragraph above in my 30-year career with FCA. Indeed, none of FCA's 168 other huddles throughout New Jersey have ever been prohibited from inviting FCA staff and volunteers onto campus simply because they're a religious club.

39. Because of the District's discrimination, I was not able to provide the ministry supervision, guidance, and support to my field leaders that I normally would have.

40. This diverted time would have been incurred even if litigation had not become necessary because the District's religious-club restriction has impeded FCA's religious mission.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 7, 2026

________________________

Harry Flaherty