UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FELLOWSHIP OF CHRISTIAN ATHLETES; FELLOWSHIP OF CHRISTIAN ATHLETES OF HOPEWELL VALLEY CENTRAL HIGH SCHOOL; and FELLOWSHIP OF CHRISTIAN ATHLETES OF TIMBERLANE MIDDLE SCHOOL,<br><br>Plaintiffs,<br><br>v.<br><br>BOARD OF EDUCATION OF THE HOPEWELL VALLEY REGIONAL SCHOOL DISTRICT; ROSETTA D. TREECE, Superintendent of Hopewell Valley Regional School District, in her official capacity; ROSETTA D. TREECE, Superintendent of Hopewell Valley Regional School District, in her personal capacity; DARYL MINUS-VINCENT, Interim Executive County Superintendent of Mercer County for the New Jersey Department of Education, in his official and personal capacities; DR. LILY LAUX, Commissioner of the New Jersey Department of Education, in her official capacity,<br><br>Defendants. | Hon. Robert Kirsch, U.S.D.J.<br>Hon. Tonianne J. Bongiovanni, U.S.M.J.<br><br>Civil Action No.: 3:26-cv-10163 |

BRIEF OF STATE DEFENDANTS IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex, P.O. Box 080
Trenton, New Jersey 08625
(609) 376-3100
Attorney for State Defendants

Luke D. Hertzel-Lagonikos
Jeremy J. Koepf
Deputy Attorneys General

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................ 2

A. School District Governance in New Jersey ............................................. 2

B. This Lawsuit ......................................................................................... 4

STANDARD OF REVIEW ............................................................................... 8

ARGUMENT .................................................................................................. 8

I. Plaintiffs Are Unlikely to Succeed on the Merits on Their Claims Against the State Defendants ..................................................... 8

II. Plaintiffs Do Not Face Any Irreparable Harm That an Injunction Against the State Defendants Would Resolve ..................... 11

CONCLUSION .............................................................................................. 14

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 11

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*,
108 F.4th 194 (3d Cir. 2024) ("*DSSA*") .......... 11, 13

*Greater Phila. Chamber of Com. v. City of Phila.*,
949 F.3d 116 (3d. Cir. 2020) .......... 8

*Kim v. Hanlon*,
99 F.4th 140 (3d Cir. 2024) .......... 8

*Knudsen v. MetLife Grp., Inc.*,
117 F.4th 570 (3d Cir. 2024) .......... 9

*Kos Pharms., Inc. v. Andrx Corp.*,
369 F.3d 700 (3d. Cir. 2004) .......... 8

*Lewis v. Gov't Emp.'s Ins. Co.*,
98 F.4th 452 (3d Cir. 2024) .......... 9

*Lutter v. JNESO*,
86 F.4th 111 (3d Cir. 2023) .......... 9

*Messina v. Coll. of N.J.*,
566 F. Supp. 3d 236 (D.N.J. 2021) .......... 13, 14

*Peace Church Risk Retention Grp. v. Johnson Controls Fire Prot. LP*,
49 F.4th 866 (3d Cir. 2022) .......... 9

*Pharmacia Corp. v. Alcon Labs.*,
201 F. Supp. 2d 335 (D.N.J. 2002) .......... 14

*Pub. Int. Legal Found. (PILF) v. Sec'y of the Commonwealth of Pa.*,
136 F.4th 456, 461 (3d Cir. 2025) .......... 9

*Spokeo v. Robins*,
578 U.S. 330 (2016) ....................................................................9

## STATUTES

N.J. Stat. Ann. § 18A:10-1 ....................................................................2

N.J. Stat. Ann. § 18A:11-1(c) ....................................................................2

N.J. Stat. Ann. § 18A:11-1(d) ....................................................................2

N.J. Stat. Ann. § 18A:11-2 ....................................................................2

N.J. Stat. Ann. § 18A:4-21 ....................................................................3

N.J. Stat. Ann. § 18A:4-22 ....................................................................3

N.J. Stat. Ann. § 18A:4-23 ....................................................................3

N.J. Stat. Ann. § 18A:7-1 ....................................................................2

N.J. Stat. Ann. § 18A:7-5 ....................................................................3

N.J. Stat. Ann. § 18A:7-8 .................................................................... 3, 9, 12

N.J. Stat. Ann. § 18A:7-8(a) ....................................................................3

N.J. Stat. Ann. § 18A:7-8(a)-(x) ....................................................................3

N.J. Stat. Ann. § 18A:7-8(c) ....................................................................3

## REGULATIONS

N.J. Admin. Code § 6A:3 ....................................................................7

N.J. Admin. Code. 6A:1-1 *et seq* ....................................................................3

## INTRODUCTION

Plaintiffs' preliminary-injunction motion against the Executive County Superintendent ("ECS") and State Commissioner of Education (collectively, "State Defendants") suffers from a basic flaw. Plaintiffs seek an injunction of a local school district policy, but seek this relief against State Defendants who did not adopt, and neither enforce nor mandate the challenged local policy. Because this is a dispute between Plaintiffs and local school officials, their motion should be denied as to the State Defendants.

Plaintiffs allege that the Hopewell Valley Regional School District (Hopewell) adopted a policy allowing adult volunteers to participate in non-religious student clubs only, and challenge this purported policy on various constitutional and statutory grounds. But this local policy is not mandated by any state law, nor did the State Defendants direct local officials to adopt this policy. Instead, the record—including a sworn certification from ECS Daryl Minus-Vincent—confirms the State Defendants' disavowal of any involvement in adopting or enforcing the alleged local policy.

Plaintiffs thus are not entitled to an injunction against the *State Defendants*. Plaintiffs are unlikely to succeed on the merits: their claims against the State Defendants fail Article III traceability and redressability, since their claimed harms are not traceable to any action by the State Defendants; for similar reasons, Plaintiffs

have no cognizable merits claim against the State Defendants. Plaintiffs also do not face irreparable harm at the hands of the State Defendants when the State has disavowed any involvement in the challenged policy—particularly given Plaintiffs' eight-month delay in seeking preliminary relief.

For these reasons, Plaintiffs' motion for preliminary injunction should be denied as to the State Defendants.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. School District Governance in New Jersey.

In New Jersey, "each school district shall be conducted, by and under the supervision of a board of education[.]" N.J. Stat. Ann. § 18A:10-1. Each board, whose members are elected, has the power and duty to promulgate rules for public schools it oversees. *Id*. § 18A:11-1(c). Further, Boards are responsible for overseeing employment within the district. *Id.* They are required to "[p]erform all acts and do all things" to lawfully and properly conduct, equip, and maintain the public schools they govern. *Id*. (d). Boards are also capable of suing or being sued in their own name. *Id*. § 18A:11-2.

New Jersey law establishes the position of Executive County Superintendent (ECS) in each county. *Id*. § 18A:7-1. The ECS is a Senate-confirmed official who reports to the State Commissioner of Education. *Id.* The ECS has general supervision over all the public schools of the districts within their county, excluding city school

districts that have their own appointed superintendent, but the ECS's powers are defined by statute. *Id*. § 18A:7-8. Specifically, state law confers twenty-four general powers and duties on the ECS. *Id*. § 18A:7-8(a)-(x). The first power explains that the ECS exercises "general supervision" over school districts in accordance with rules prescribed by the State Board of Education. *Id*. § 18A:7-8(a). No State Board of Education rule, however, provides any authority for the ECS to approve, review, or overturn local school district policies concerning adults allowed on campus or to participate in student run clubs. *See* N.J. Admin. Code. 6A:1-1 *et seq*.

Nor does any other statutorily enumerated power or duty permit the ECS to direct or review specific operational school policies or directly oversee the daily operations of a school district. *See* N.J. Stat. Ann. § 18A:7-8. The ECS may advise and counsel the local districts' boards of education regarding the performance of their duties, but the ECS has no employer-employee relation with board members or any district staff, and has no veto authority with respect to decisions of the local boards. *Id.* § 18A:7-8(c).

The Commissioner of Education is the chief executive officer of the NJDOE, appointed by the Governor and confirmed by the Senate. N.J. Stat. Ann. § 18A:4-21. The Commissioner has general charge and supervision of the work of the NJDOE and general supervision of all public schools. *Id.* §§ 18A:4-22, -23.

**B. This Lawsuit.**

Plaintiffs Fellowship of Christian Athletes ("FCA") and its Hopewell Valley Central High School and Timberlane Middle School chapters filed the instant suit alleging that Hopewell precludes student religious clubs from hosting outside volunteers on the same terms as non-religious clubs. *See generally* Compl., ECF No. 1. The complaint alleges that FCA chapters participate in student-led "huddles" in which they study the Bible and pray and invite adult FCA members and other adult volunteers to attend. *Id.* ¶¶ 2-3. It alleges that local school officials forbid "outside individuals" from attending any meetings of religious clubs, while allowing outside volunteers to attend non-religious clubs' meetings, and alleges that this policy violates the First Amendment's Free Exercise and Free Speech Clauses, among other constitutional and statutory claims. *Id.* ¶¶ 98-214.

The complaint raises a number of allegations regarding Plaintiffs' engagement with local school officials regarding the alleged policy. As alleged, on March 13, 2025, Freedom from Religion Foundation ("FFRF") emailed Dr. Rosetta D. Treece, Superintendent of Hopewell, asking Hopewell to investigate and ensure that outside adults are not permitted to regularly lead, attend, or participate in student religious clubs. ECF No. 1 ¶ 68. On March 25, Hopewell Attorney Paul H. Green emailed FFRF stating that Dr. Treece directed the Timberlane Middle School Principal

Christoper Turnbull to immediately stop the direct involvement of any outside adults in the meetings of the FCA. *Id.* ¶ 69.

On August 26, 2025, Turnbull emailed an FCA representative, Carolyn McDonough, stating: "[r]egarding the religious clubs, the law stipulates that the students must run them; no outside individuals are permitted, and one of our staff members must supervise the club. The staff member is just there to ensure students are following our code of conduct and can not run the club. This is from our counsel." *Id.* ¶ 72; ECF No. 10-6. On September 11, 2025, Hopewell High School Principal Patricia Riley informed McDonough and another FCA representative that Hopewell High School would follow the same policy. ECF No. 1 ¶ 73; ECF No. 10-7, p.6. On September 16, 2025, Riley explained in an email that, "Dr. Treece contacted the district's attorney for guidance, and the information that Mr. Turnbull and I provide came from his directions." *Id*. at p.4.

In or about September 2025, ECS Minus-Vincent attended a meeting with superintendents of school districts located within Mercer County. As ECS Minus-Vincent confirmed in his attached certification, at this meeting Dr. Treece "mentioned an issue regarding outside volunteers for student organizations and relayed the advice her Board Attorney provided." Cert. of Daryl Minus-Vincent ¶ 10 ("Minus-Vincent Cert."). ECS Minus-Vincent did not "provide any directive or legal guidance to Dr. Treece," but rather "suggested that she follow the Board

attorney's advice." *Id.* ¶ 11. ECS Minus-Vincent further certified that he does "not have the authority to direct Dr. Treece to take specific action related to the underlying issue and did not attempt to issue any such directive." *Id.*

ECS Minus-Vincent's certification further confirms that local school officials are not acting at his direction or implementing any state mandate. He certified that he "did not give legal advice or direct Dr. Treece to take any specific action. The extent of my comments to Dr. Treece was to suggest that she follow her attorney's advice." Minus-Vincent Cert. ¶ 16. And he further attested that "there is no ECS or NJDOE policy implicated here. This matter involves a District or Board of Education policy decision." *Id.* ¶ 17.

On October 28, 2025, Dr. Treece emailed Riley, FCA State Director Harry Flaherty, and McDonough, blind copying ECS Minus Vincent. *Id.* ¶ 79; ECF No. 10-02 ¶ 2; Minus-Vincent Cert. ¶ 12. Later that week, Flaherty emailed Dr. Treece, the Board's attorney, and ECS Minus-Vincent, asking Hopewell to provide FCA students the ability to host outside volunteers at on-campus gatherings. ECF No. 1 ¶ 81. ECS Minus-Vincent responded to Flaherty on November 10, stating that the issues highlighted should be addressed by Hopewell, its Board of Education, and its attorney and explaining that the Mercer County Office of Education and the ECS do not resolve the type of dispute raised by Flaherty. Minus-Vincent Cert. ¶ 14. ECS Minus-Vincent further stated that if Flaherty wished to appeal or challenge the

actions of the Board of Education, Flaherty could do so through the contested case process before the Commissioner of Education, pursuant to N.J. Admin. Code § 6A:3. He also explained how general information about the appeal process could be accessed. *Id*. ECS Minus-Vincent concluded by stating that he was hopeful that Hopewell and the various stakeholders could resolve the dispute in a manner which is satisfactory to all stakeholders. *Id*.

Although there is no record of any further communications by ECS Minus-Vincent, the other parties continued corresponding. On November 20, 2025, Flaherty emailed Dr. Treece asking for a response within a week given that students' rights "are being infringed." ECF No. 1 ¶ 83. On November 24, Dr. Treece replied, stating "I am not sure what response you are referring to. I am complying to the expectations for religious clubs. The district has given our position." *Id*. And on December 19, 2025, the FCA's counsel emailed Dr. Treece, Board attorney Green, and ECS Minus-Vincent demanding that Hopewell immediately allow FCA students to have adult guests at their meetings. Minus-Vincent Cert. ¶ 15.

In August 2026—more than eight months later—Plaintiffs filed a complaint and this motion for a preliminary injunction. ECF Nos. 1 & 10. The State Defendants file this opposition.

## STANDARD OF REVIEW

"Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d. Cir. 2004) (internal citations and quotations omitted). "To obtain any preliminary injunction, a plaintiff must show (1) he will likely succeed on the merits; (2) he will likely suffer irreparable injury; (3) the balance of equities favors him; and (4) the injunction serves the public interest." *Kim v. Hanlon*, 99 F.4th 140, 154 (3d Cir. 2024) (internal citation omitted).. The movant must establish the first two factors, known as "gateway factors," before a court may consider the last two. *Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 133 (3d. Cir. 2020).

## ARGUMENT

Plaintiffs have failed to establish that either of the two gateway factors necessitate injunctive relief against the State Defendants.

### I. Plaintiffs Are Unlikely to Succeed on the Merits on Their Claims Against the State Defendants.

Plaintiffs' claims against the State Defendants are unlikely to succeed for a straightforward reason: the harm they allege results from a local school policy, not from any action or decision taken or dictated by the State Defendants. That is fatal both to Article III standing and the merits.

1. Plaintiffs lack Article III standing for their claims against the State Defendants. Article III standing "is a threshold jurisdictional issue," *Pub. Int. Legal*

*Found. v. Sec'y of the Commonwealth of Pa.*, 136 F.4th 456, 461 (3d Cir. 2025) *(PILF)*, and federal courts must resolve it "before proceeding to the merits," *Peace Church Risk Retention Grp. v. Johnson Controls Fire Prot. LP*, 49 F.4th 866, 869-70 (3d Cir. 2022). "To have standing, [t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *PILF*, 136 F.4th at 461) (citing *Spokeo v. Robins*, 578 U.S. 330, 338 (2016). To satisfy traceability and redressability, a plaintiff must show the injury-in-fact has a "causal connection" to the challenged action and would "likely" be remedied by the requested relief against the defendant. *Lutter v. JNESO*, 86 F.4th 111, 127-28 (3d Cir. 2023). Put differently, a plaintiff must show "the defendant's challenged action is the 'but for' cause of the injury." *Knudsen v. MetLife Grp., Inc.*, 117 F.4th 570, 577 (3d Cir. 2024). A plaintiff must have "standing for each claim they bring." *Lewis v. Gov't Emp.'s Ins. Co.*, 98 F.4th 452, 459 (3d Cir. 2024) (internal citation omitted).

Plaintiffs fail traceability and redressability, since the harm they allege is a local school district policy not adopted, implemented, or directed by the State Defendants. The challenged policy cannot be attributed to the State Defendants by virtue of their relationship to local school districts. Instead, state law confirms that the ECS does not have authority to establish or direct local boards of education to implement any particular local policy. N.J. Stat. Ann. § 18A:7-8; *see* Minus-Vincent

Cert. ¶ 6-7 (explaining that local districts and boards of education are instead "responsible for setting forth specific school district policies").

And though Plaintiffs allege local school officials were acting at the direction of ECS Minus-Vincent, the record instead confirms the State Defendants' disavowal of any involvement in adopting the alleged local policy. ECS Minus-Vincent "did not give legal advice or direct Dr. Treece to take any specific action," and only "suggest[ed] that [Dr. Treece] follow her attorney's advice." Minus-Vincent Cert. ¶ 16; *see also id.* ¶ 11 (confirming the ECS does "not have the authority to direct Dr. Treece to take specific action related to the underlying issue and did not attempt to issue any such directive."). ECS Minus-Vincent further explained to all parties involved that this was a matter for Hopewell school officials, not the ECS, to resolve. *Id.* ¶¶ 11, 14. Plaintiffs likewise do not even allege any action by the Commissioner related to the alleged local policy. Nor does any state law or regulation mandate this particular local policy. *See id.* ¶ 17. Plaintiffs' alleged harm is thus not traceable to any action by the State Defendants and would not be redressed by an injunction against these particular defendants. That is fatal to Article III standing.

2. For similar reasons, Plaintiffs have no legal entitlement to relief from the State Defendants on any of their merits theories. Because Plaintiffs challenge a local school district policy not implemented or mandated by the State Defendants, their various constitutional and statutory theories do not state any cognizable claim for

relief against the State Defendants. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). For this reason, too, Plaintiffs are unlikely to succeed on the merits of their claims against the State Defendants.

## II. Plaintiffs Do Not Face Any Irreparable Harm That an Injunction Against the State Defendants Would Resolve.

Plaintiffs likewise cannot show irreparable harm, for two reasons. For one, an injunction against the *State Defendants* is not "necessary to prevent irreparable harm," because there is no action by the ECS or Commissioner that threatens Plaintiffs with irreparable harm. *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024) ("*DSSA*"). As set forth above, the alleged policy Plaintiffs challenge is solely the action of local school district officials, as the State Defendants did not direct those local decisions and the alleged local policy is not mandated or approved by any state action or law.

Indeed, the inclusion of the State Defendants appears to be based on a misunderstanding of the ECS position in New Jersey. As noted above, the ECS's powers are defined by statute which does not provide the ECS any authority to approve, review, or overturn local board decisions concerning adult participation at student clubs. ECS Minus-Vincent's connection to Hopewell is merely to serve as an NJDOE liaison to the District. *See id*. ¶ 5. He does not have "direct authority over the district's personnel or operations" and instead "Districts/boards of education are

responsible for setting forth specific school district policies." *Id.* ¶ 6. While the ECS can advise boards of education about the performance of their duties, he does not establish, order, or otherwise direct any board of education policies, nor have a veto over local board decisions. *Id.* ¶ 7; *see* N.J. Stat. Ann. § 18A:7-8.

Nor did ECS Minus-Vincent in any way direct the Hopewell Valley Regional School District to implement the challenged policy—or to take any course of action concerning student clubs. *Id.* ¶ 11. To the contrary, ECS Minus-Vincent only "suggest[ed] that [Dr. Treece] follow her attorney's advice" but specifically "did not give legal advice or direct Dr. Treece to take any specific action." Minus-Vincent Cert. ¶ 16; *see also id.* ¶ 11 (ECS Minus-Vincent certifying that he does "not have the authority to direct Dr. Treece to take specific action related to the underlying issue and did not attempt to issue any such directive."). ECS Minus-Vincent likewise later explained to the FCA (with Dr. Treece and the Board attorney copied) that this is a matter for Hopewell to address, not the ECS, and directed the parties to the Commissioner of Education's dispute resolution process if needed. *Id.* ¶¶ 11, 14. Thus, ECS Minus-Vincent did not have the authority to, nor did he, direct Hopewell to adopt the alleged policy, and the record instead establishes that he disclaimed the NJDOE's role in the decision-making process at issue.

Plaintiffs likewise do not identify any action by Defendant Commissioner Laux giving rise to irreparable harm. Indeed, Plaintiffs do not even allege any

involvement by the Commissioner in the challenged local actions. Simply, whatever misunderstanding Plaintiffs may have had in 2025 regarding the State's involvement in the challenged local actions, the record—including ECS Minus-Vincent's disavowal of any State role in implementing or directing those actions—confirms Plaintiffs do not face any irreparable harm resulting from the State Defendants.

Moreover, Plaintiffs' claim of irreparable harm is undercut by their delay in seeking relief. Plaintiffs allege that local school officials implemented the challenged policy in August 2025, and the record makes clear that by December 2025, the local district had made clear its position that it would maintain this policy. Yet Plaintiffs waited until August 2026 to seek preliminary relief. Plaintiffs' long delay in seeking injunctive relief "indicates[] at least a reduced need for such drastic, speedy action." *DSSA*, 108 F.4th at 206 (noting the "maxim of equity is that it 'assists the diligent, not the tardy'" and finding even a "four-month delay suggests that [the party] felt little need to move quickly"); *see also Messina v. Coll. of N.J.*, 566 F. Supp. 3d 236, 249 (D.N.J. 2021) (finding that any purported harm plaintiffs may face was a consequence of their own delay because they waited over four months to request injunctive relief). In fact, courts in this District have repeatedly held that delay of a few months "knocks the bottom out of any claim of immediate and irreparable harm," offering a "dispositive basis" to reject a preliminary injunction.

*Pharmacia Corp. v. Alcon Labs*., 201 F. Supp. 2d 335, 382-83 (D.N.J. 2002); *Messina v. Coll. of New Jersey*, 566 F. Supp. 3d at 249.

In short, because Plaintiffs are unlikely to succeed on the merits and cannot establish irreparable harm as to the State Defendants, no injunction should issue against the State Defendants.

**CONCLUSION**

This Court should deny the motion for preliminary injunction as to the State Defendants.

Respectfully submitted,

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY

By: */s/ Luke D. Hertzel-Lagonikos*
Luke D. Hertzel-Lagonikos
Deputy Attorney General

Date: September 8, 2026