Richard C. Osborne
1919 Pennsylvania Ave. N.W., Ste. 400
Washington, DC 20006
(202) 955-0095
*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FELLOWSHIP OF CHRISTIAN ATHLETES, *et al.*,<br>*Plaintiffs*,<br>v.<br>BOARD OF EDUCATION OF THE HOPEWELL VALLEY REGIONAL SCHOOL DISTRICT, *et al.*,<br>*Defendants*. | **Civil Action No. 3:26-cv-10163-RK-TJB**<br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. The District misstates the actions FCA challenges and the injunction it seeks .......... 1

II. Plaintiffs have organizational and representational standing. .......... 4

III. Plaintiffs are entitled to a preliminary injunction. .......... 8

A. Plaintiffs are likely to succeed on the merits. .......... 8

B. Plaintiffs easily satisfy the remaining preliminary-injunction factors. .......... 13

CONCLUSION .......... 15

CERTIFICATE OF SERVICE .......... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blunt v. Lower Merion Sch. Dist.*,
767 F.3d 247 (3d Cir. 2014) ....................5

*Bus. Leaders in Christ v. Univ. of Iowa*,
2018 WL 4701879 (S.D. Iowa 2018) ....................6

*Capitol Hill Baptist Church v. Bowser*,
496 F. Supp. 3d 284 (D.D.C. 2020)....................14

*Circle Schs. v. Pappert*,
381 F.3d 172 (3d Cir. 2004) ....................12

*Constitution Party v. Aichele*,
757 F.3d 347 (3d Cir. 2014) ....................5

*DeJohn v. Temple Univ.*,
537 F.3d 301 (3d Cir. 2008) ....................3

*Donovan v. Punxsutawney Area Sch. Bd.*,
336 F.3d 211 (3d Cir. 2003) ....................11

*Fellowship of Christian Athletes v. D.C.*,
743 F. Supp. 3d 73 (D.D.C. 2024)....................6, 14, 15

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Ed.*,
82 F.4th 664 (9th Cir. 2023) ....................7, 14

*Free Speech Coal. v. Att'y Gen.*,
825 F.3d 149 (3d Cir. 2016) ....................5

*Fulton v. City of Philadelphia*,
593 U.S. 522 (2021)....................15

*Good News Club v. Milford Cent. Sch.*,
533 U.S. 98 (2001)....................6

*Holt v. Hobbs*,
574 U.S. 352 (2015) .......... 8

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) .......... 8

*InterVarsity v. Bd. of Governors of Wayne State Univ.*,
534 F. Supp. 3d 785 (E.D. Mich. 2021) .......... 6, 12

*InterVarsity v. Univ. of Iowa*,
408 F. Supp. 3d 960 (S.D. Iowa 2019) .......... 6

*Kennedy v. Bremerton Sch. Dist.*,
597 U.S. 507 (2022) .......... 10

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 5

*Mahmoud v. Taylor*,
606 U.S. 522 (2025) .......... 8

*N.J. Coal. of Auto. Retailers v. Mazda Motor of Am.*,
2023 WL 2263741 (D.N.J. Feb. 28, 2023) .......... 8

*Nat'l Women's Law Ctr. v. Off. of Mgmt. & Budget*,
358 F. Supp. 3d 66 (D.D.C. 2019) .......... 14

*Ne. Pa. Freethought Soc'y v. Cnty. of Lackawanna Transit Sys.*,
938 F.3d 424 (3d Cir. 2019) .......... 12

*Nextel West v. Unity Twp.*,
282 F.3d 257 (3d Cir. 2002) .......... 4

*Pa. Psychiatric Soc'y v. Green Spring Health Servs.*,
280 F.3d 278 (3d Cir. 2002) .......... 5, 6

*Prince v. Jacoby*,
303 F.3d 1074 (9th Cir. 2002) .......... 11

*Red Sense v. Bohuslavskiy*,
2025 WL 3539968 (D.N.J. Dec. 10, 2025) .......... 14

*Road-Con v. City of Philadelphia*,
120 F.4th 346 (3d Cir. 2024) ....................................................................3

*Roman Catholic Diocese v. Cuomo*,
592 U.S. 14 (2020)..................................................................................4

*Smith v. City of Atlantic City*,
138 F.4th 759 (3d Cir. 2025) ....................................................................9

*Student Coal. for Peace v. Lower Merion Sch. Dist. Bd.*,
776 F.2d 431 (3d Cir. 1985) ..................................................................10

*Tandon v. Newsom*,
593 U.S. 61 (2021)..................................................................................9

*Times Mirror Mags. v. L.V. Sports News*,
212 F.3d 157 (3d Cir. 2000) ..................................................................14

*Trinity Lutheran Church of Columbia v. Comer*,
582 U.S. 449 (2017)................................................................................8

**Statutes**

20 U.S.C. § 4071 ........................................................................10, 11

## INTRODUCTION

Remarkably, neither set of Defendants tries to defend their actions against FCA. The State Defendants wholly abandon the District Defendants' actions and policies. For their part, the District Defendants try to obscure their repeated statements to students, parents, FCA, and the public that—to quote the State Defendants—the District banned the "involvement of any outside adults in the meetings of the FCA." And the District's new position is little better, relegating FCA to irregular mentor access while exempting "many" other recognized clubs from that limitation. In fact, one exempt club—the Robotics Club—has about ten mentors who regularly attend its twice-weekly meetings. The District's justification for its continued discrimination again relies on FCA's religious status: regular mentor attendance at the Robotics Club is fine, but, the District (wrongly) says, regular attendance at FCA violates "the separation of church and state." An injunction is required.

## ARGUMENT

### I. The District misstates the actions FCA challenges and the injunction it seeks.

The District's brief hinges entirely on a faulty framing of this case. First, the District suggests it told Plaintiffs only that FCA volunteers couldn't "*regularly* attend" or "attend *every* FCA meeting." Dist.Opp.3, 6 (ECF 29) (emphasis added). Then it claims Plaintiffs now seek an injunction granting FCA volunteers "seemingly unregulated weekly access to District students." Dist.Opp.2-3, 38.

Wrong twice over. Start with the District's policy. Until its brief, the District's stance has been clear and consistent: because FCA is "*religious*," no "outside advisors/volunteers" may "come into [District] schools." Flaherty Ex. F (ECF 10-8) at 1 (emphasis original). That's what the District's counsel said in March 2025: "Dr. Treece is directing [Timberlane] to immediately stop the direct involvement of any outside adults in the meetings of [FCA]." Flaherty Ex. C (ECF 10-5) at 1. That's what Principals Turnbull and Riley told FCA in fall 2025: "Regarding the religious clubs, the law stipulates that ... **no outside individuals are permitted**." Riley Ex. D (ECF 29-7) at 4 (emphasis in original). That's what Dr. Treece publicly announced at an October 2025 board meeting: "It is against the law for any school to have a club that is religious in base that have people coming in from the outside that mentor within the club." Osborne Ex. C (ECF 10-15) at 1-2. And that's what Dr. Treece told FCA in an in-person meeting: "As we discussed in our meeting today, ... we were out of compliance by allowing outside advisors/volunteers to come into our schools for a *religious* club." Flaherty Ex. F at 1 (emphasis in original).

Little wonder, then, that FCA has consistently understood the District's policy to be just that: a "ban on outside visitors for religious clubs." Flaherty Ex. H (ECF 10-10) at 2; *see also* Osborne Ex. H (ECF 10-20) at 1; Riley Ex. G (ECF 29-7) at 14-15. The State Defendants likewise understood the District as having "stop[ped] the direct involvement of any outside adults in the meetings of the FCA" and that that

"the local district had made clear its position that it would maintain this policy." Minus-Vincent Cert. (ECF 28-1) ¶¶ 9, 13, 15; State.Opp.13. Rather than correcting these understandings, the District affirmed them, with Dr. Treece insisting she had communicated "the expectations for religious clubs." Flaherty Ex. H at 1. And the District *still* relies on FCA's religious status to justify its actions, claiming allowing a religious club to have regular mentor access would violate "the separation of church and state as embodied in the Establishment Clause." Dist.Opp.13.

Now for the injunction. Plaintiffs seek "to host outside volunteers at their meetings to the same extent and on the same nondiscriminatory terms as other student groups." Prop. Order (ECF 10-21) at 2. That bears no resemblance to the District's charge that Plaintiffs "seek ... *special* access." Dist.Opp.1. If the District believed it were treating religious clubs equally, it's unclear why it opposes Plaintiffs' motion at all, much less with the vehemence reflected in its brief.

The preliminary relief Plaintiffs seek remains warranted for two reasons. First, even if the District has now partially dialed back its discrimination after being sued, that gives the Court "no assurance that [the District] will not reimplement its pre-[litigation] policy, absent an injunction." *DeJohn v. Temple Univ.*, 537 F.3d 301, 308-11 (3d Cir. 2008). Preventing such gamesmanship is why courts regularly reject the "simple expedient of suspending ... challenged conduct" once sued. *Road-Con v. City of Philadelphia*, 120 F.4th 346, 356-58 (3d Cir. 2024).

Second, the District continues to treat FCA worse than other clubs. The District insists on restricting FCA to irregular mentor access while admitting that this doesn't apply to "many" of its recognized extracurricular clubs. Treece Cert. ¶ 5 & Ex. A (ECF 29-1) (list). For instance, one of these clubs, the Robotics Club, "has external mentors that regularly attend" its meetings in "the high school's machine shop." N.I. Decl. ¶ 3; *see also* Osborne Ex. E (ECF 10-17) (requiring Robotics Club mentors to have "level II volunteer" status to regularly come on campus). As one of the club's leaders explains, these "mentors are instrumental to [the] team inside and outside the shop," and "[t]hey're the main reason [the] team is still afloat." N.I. Decl. ¶ 4. The club meets almost "every day" from about January to March, and twice a week the rest of the year. Second Osborne Ex. B at 2.

Thus, even if the District's new position wasn't just litigation posturing, it'd still "disadvantage[e] [Plaintiffs] in the same fundamental way"—and "injunctive relief" would "remain[] available." *Nextel West v. Unity Twp.*, 282 F.3d 257, 261-64 (3d Cir. 2002). Plaintiffs "have made the showing needed," "and there is no reason why they should bear the risk of suffering further irreparable harm" while the District keeps discriminating. *Roman Catholic Diocese v. Cuomo*, 592 U.S. 14, 21 (2020).

## II. Plaintiffs have organizational and representational standing.

With the underbrush now cleared, the District's other arguments also fail. First, Plaintiffs have standing. Standing requires "a cognizable injury," "causally related

to" defendant's conduct, and "redressable by judicial action." *Pa. Psychiatric Soc'y v. Green Spring Health Servs.*, 280 F.3d 278, 283 (3d Cir. 2002). Organizations satisfy these elements "by asserting ... injuries they directly sustain" *or* as representatives of their members. *Id.* Plaintiffs have standing both ways.

***Organizational Standing.*** First, Plaintiffs have standing in their own right. If a plaintiff is "an object of the action," "there is ordinarily little question" it has standing. *Constitution Party v. Aichele*, 757 F.3d 347, 362 (3d Cir. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992)). The challenged action here is the discrimination against "religious clubs" hosting volunteers, Flaherty Ex. D at 1, making Plaintiffs—religious clubs—the objects of this action. Because "the regulation is directed at [Plaintiffs]" and forces them to forego their desired conduct, "[s]ufficient injury exists to confer standing." *Free Speech Coal. v. Att'y Gen.*, 825 F.3d 149, 166 (3d Cir. 2016); *see* McDonough Decl. (ECF 10-11) ¶¶ 16, 19, 38, 42; P.D. Decl. ¶¶ 4, 10-12; J.K. Decl. ¶¶ 8, 11-12; Sydney Young Decl. ¶¶ 7, 9, 11; A.A. Decl. ¶ 6; J.T. Decl. ¶¶ 5-6; K.K. Decl. ¶¶ 5-6.

Even if Plaintiffs weren't the object of the challenged regulation, the District's policy nonetheless "perceptibly impair[s]" Plaintiffs' "ability to provide services," separately giving them standing. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 285 (3d Cir. 2014). The District restricts the religious support FCA volunteers would otherwise provide at FCA huddle meetings, frustrating their ability to fulfill FCA's

mission of encouraging students' "growing relationship with Jesus Christ." *See* Flaherty Decl. (ECF 10-2) ¶¶ 8, 12, 16; McDonough Decl. ¶¶ 9, 13-18, 38-39.

That Plaintiffs have organizational standing is unremarkable. Successful cases involving student groups seeking equal access to public campuses are routinely brought by—unsurprisingly—the student groups. *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 107 (2001); *Fellowship of Christian Athletes v. D.C.*, 743 F. Supp. 3d 73, 78 (D.D.C. 2024); *InterVarsity v. Univ. of Iowa*, 408 F. Supp. 3d 960, 973 (S.D. Iowa 2019); *Bus. Leaders in Christ v. Univ. of Iowa*, 2018 WL 4701879, at *1 (S.D. Iowa 2018); *InterVarsity v. Bd. of Governors of Wayne State Univ.*, 534 F. Supp. 3d 785, 796 (E.D. Mich. 2021). Defendants identify no contrary examples.

***Representational Standing.*** Plaintiffs also have standing on behalf of their members. Such "representational" (or "associational") standing requires showing (1) the organization's members would have standing, (2) the interests the organization seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires individual participation. *Pa. Psychiatric Soc'y*, 280 F.3d at 283. FCA Central and Timberlane are unincorporated associations including FCA's student members and the FCA volunteers. *See* McDonough Decl. ¶¶ 4, 13-14, 21; Flaherty Decl. ¶¶ 10-11. FCA Central and FCA Timberlane are member huddles of FCA National, McDonough Decl.¶ 4, and FCA student leaders and staff are also members of FCA National, *id.* ¶ 14.

Defendants challenge only the first element, questioning whether Plaintiffs' members exist and face ongoing injury. Dist.Opp.17-18. But FCA has student members, as the District repeatedly acknowledges. Dist.Opp.17 (describing FCA's current student-led meetings); Treece Cert. ¶ 16; Turnbull Cert. (ECF 29-2) ¶¶ 3, 15-16; Riley Cert. (ECF 29-4) ¶¶ 12-13, 16, 18; *see also* Compl. ¶¶ 94-97 (ECF 1); McDonough Decl. ¶¶ 39-41. And the District knows FCA's members are being harmed, not least since an FCA member appeared by name in a public forum and told the District as much. Osborne Ex. C; Treece Cert. ¶ 17; P.D. Decl. ¶¶ 7-9. Principal Riley admits FCA students repeatedly asked her to resume allowing "FCA 'mentors' to attend their meetings." Riley Cert. ¶ 16; *id.* at ¶¶ 18, 21 (similar).

Further, even though Plaintiffs need "not provid[e] 'evidence from actual students,'" *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Ed.*, 82 F.4th 664, 682 (9th Cir. 2023) (en banc), they have that too. Seven FCA Central and Timberlane student leaders and members testify that the District's policy is depriving them of valuable mentorship and that they would immediately invite FCA volunteers to return if permitted. *See* P.D. Decl. ¶¶ 4-10; J.K. Decl. ¶¶ 8-12; Young Decl. ¶¶ 7-9, 11; A.A. Decl. ¶ 6; J.T. Decl. ¶¶ 5-6; K.K. Decl. ¶¶ 5-6; D.K. Decl. ¶¶ 7-10; McDonough Decl. ¶¶ 15-19, 23, 38-39, 41.[1]

[1] FCA also meets the unchallenged elements of representational standing. Its volunteers' ability to access huddle meetings is germane to FCA's mission. *E.g.*, Flaherty

## III. Plaintiffs are entitled to a preliminary injunction.

### A. Plaintiffs are likely to succeed on the merits.

***Free exercise.*** Strict scrutiny applies under the Free Exercise Clause for two separate reasons: (1) the District excludes Plaintiffs from a benefit (volunteer access) because they are religious, Mot.14-16 (ECF 10-1); and (2) the District's burden on FCA's religious exercise is not neutral and generally applicable, Mot.16-20.

The District responds that Plaintiffs lack a "burden[ ]" because, while they face a discriminatory restriction on access to mentors, they're "free" to engage in "prayer, worship, and religious teaching." Dist.Opp.33. But religious discrimination is itself an "odious" burden that "cannot stand," *Trinity Lutheran Church of Columbia v. Comer*, 582 U.S. 449, 467 (2017); it also cannot be excused by allowing "other forms of religious exercise," *Holt v. Hobbs*, 574 U.S. 352, 362 (2015); *Mahmoud v. Taylor*, 606 U.S. 522, 561-63 (2025) (rejecting "alternatives" to exercise at issue).

Next, the District claims "strict scrutiny is not remotely implicated" because it's seeking "to ensure that meetings of its student organizations" aren't "regularly attended by non-school persons." Dist.Opp.32. But the District's own opposition

---

Decl. ¶¶ 8, 12, 16. And an injunction is the classic form of relief not requiring individual participation. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343-44 (1977); *N.J. Coal. of Auto. Retailers v. Mazda Motor of Am.*, 2023 WL 2263741, at *3 (D.N.J. Feb. 28, 2023) ("Courts in this District have routinely observed that it is almost a bright-line rule that requests by an association for ... injunctive relief do not require participation by individual association members[.]" (cleaned up))

shows it hasn't pursued this interest against all "comparable secular activity." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021). At minimum, the claimed bar on "regular" attendance categorically doesn't apply to "many" favored "recognized clubs." Treece Cert. ¶ 5. And those clubs benefit accordingly, such as the Robotics Club's ability to have external mentors at weekly-to-daily on-campus meetings. There is no relevant difference between Robotics Club and FCA for *Tandon* purposes: "permitt[ing]" this attendance "undermine[s]" the District's stated interest, "render[ing its] policy not generally applicable." *Smith v. City of Atlantic City*, 138 F.4th 759, 770-71 (3d Cir. 2025).

The District finally suggests its policy is required by the EAA and the Establishment Clause. Dist.Opp.13, 28-30. *But see* State.Opp.9 (emphasizing policy is purely "local"). But the District misunderstands the EAA, *see infra*, and there is in any event no "federal regulatory exception" to the First Amendment. *Smith*, 138 F.4th at 771. As for the Establishment Clause, the District's theory turns on the notion that Plaintiffs seek "preferential access" for "FCA employees." Dist.Opp.28-29. Not so: Plaintiffs seek FCA students' having the same access to guidance from mentors in their area of interest (faith and sports) as Robotics Club members have for theirs (robots). Merely permitting that same access—in voluntary meetings, during non-curricular time, physically separate from other students—is not an Establishment

Clause violation. Mot.21-22 (collecting cases). The District's school-prayer cases are far afield. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 538-39 (2022).

***Equal Access Act.*** The District doesn't dispute that it is subject to the EAA and that its limited open forum "includes nonstudent participation." *Student Coal. for Peace v. Lower Merion Sch. Dist. Bd.*, 776 F.2d 431, 442 (3d Cir. 1985). The District therefore violates the EAA because it denies FCA equal access to outside volunteers on account of FCA's religious speech. Mot.26-29.

The District's counterintuitive response is that its actions are *mandated* by the EAA, because the EAA supposedly "require[s]" schools to prohibit non-school persons from "*regularly attend[ing]* activities of student groups." Dist.Opp.22-23 (quoting 20 U.S.C. § 4071(c)(5)). But this argument—which is based entirely on *dicta* from *Student Coalition for Peace*, a case not involving a prohibition on regular attendance—fails for three reasons.

*First*, even if this were true, the EAA wouldn't justify the *actual* policy the District has applied against Plaintiffs—prohibiting *any* volunteer attendance *at all*.

*Second*, the EAA *doesn't* require schools to prohibit regular attendance by nonschool persons. The statute imposes three prohibitions—a covered school may not (1) "deny equal access" to, (2) deny "a fair opportunity to," or (3) "discriminate against" religious student groups. 20 U.S.C. § 4071(a). It then says a school doesn't violate *one* of these prohibitions—"fair opportunity"—if it, among other things,

"uniformly provides that ... nonschool persons may not direct, conduct, control, or regularly attend" student-group meetings. *Id.* § 4071(c), (c)(5). Thus, a school doesn't *have* to prohibit regular attendance by nonschool persons; it simply *may* do so without violating the statute's "fair opportunity" requirement. *See Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 222 (3d Cir. 2003) (interpreting EAA based on "plain meaning of the statutory text").

*Third*, even if schools did have to prohibit regular attendance by nonschool persons, they would have to do so "uniformly." 20 U.S.C. § 4071(c). And "merely meeting the criteria for 'fair opportunity' could not possibly satisfy the affirmative requirements of equal access and non-discrimination"; they are "disjunctive." *Prince v. Jacoby*, 303 F.3d 1074, 1080-82 (9th Cir. 2002). Here, however, while the District purports to bar regular attendance at FCA meetings, it doesn't bar regular attendance at "many" other clubs, such as the Robotics Club. That violates the EAA.

Finally, the District gestures at § 4071(c)(5)'s separate language about nonschool persons "direct[ing], conduct[ing, or] control[ling]" student groups, but it stops short of claiming FCA volunteers do that. For good reason—the testimony, from volunteers, students, and District employees alike, shows they don't. Riley Cert. ¶¶ 13, 21-22 & Ex. D at 4 ("students drive [FCA] meetings"); Turnbull Cert. ¶¶ 14-15; McDonough Decl. ¶ 10; Flaherty Decl. ¶ 10; Young Decl. ¶¶ 8-9; J.K. Decl. ¶¶ 6, 8-9; P.D. Decl. ¶¶ 5, 9-10; D.K. Decl. ¶¶ 6-7. The District claims that what it calls a

"script" shows Carolyn "was fully aware that the extent to which she was involved in the FCA meetings ran afoul of the Act." Dist.Opp.25-26. But this document wasn't "prepared" by Carolyn "for student FCA members to read," Dist.Opp.25—it was prepared by a student FCA member and his mother, P.D. Decl. ¶¶ 7-8. And the reason it said "students should not say anything about Carolyn 'LEADING at all in the club or in prayer' is because Carolyn *didn't* lead the club, and [the student] wanted to make sure no student gave the wrong impression." *Id.* ¶ 9.

***Speech, association, and assembly.*** The District's policy violates FCA's speech, association, and assembly rights. The policy violates FCA's free-speech rights because it allows adult participation and speech for secular groups while restricting religious groups—making it viewpoint discriminatory and unreasonable. *See Ne. Pa. Freethought Soc'y v. COLTS*, 938 F.3d 424 (3d Cir. 2019). The policy violates FCA's association rights because being barred from inviting mentors "substantially burdens [FCA's] mission." *Circle Schs. v. Pappert*, 381 F.3d 172, 182 (3d Cir. 2004). And the policy violates FCA's assembly rights because it denies FCA equal "ability to assemble as a campus ministry." *Wayne State*, 534 F. Supp. 3d at 827.

The District responds that it doesn't prevent students from associating, assembling, or engaging in FCA-affiliated religious speech. Dist.Opp.31-32. But that misses the point: solely because FCA is a "*religious* club," its students can't associate, assemble, or engage in religious speech with *nonschool volunteers*. Flaherty Ex.

F at 1. And the District allows other student groups to invite outside volunteers, giving them the benefits of mentorship that the District says help students "flourish," Osborne Ex. F at 5. That double standard is unlawful.

### B. Plaintiffs easily satisfy the remaining preliminary-injunction factors.

***Irreparable harm.*** The District doesn't contest that loss of First Amendment and EAA rights is irreparable harm. Mot.35-37. Rather, it claims FCA "delayed" in seeking relief "to use this as a newsworthy opportunity to push its political and religious agenda." Dist.Opp.36-37. This accusation is baseless.

FCA did not delay in seeking to protect its rights. While the District adopted its discriminatory ban in March 2025, it did not enforce the policy until August 2025. McDonough Decl. ¶¶ 27-28. And once it did so, FCA spent months meeting and communicating with District officials. *See* Flaherty Decl. ¶¶ 24-34. The District refused to change course. FCA then asked the District's counsel in January, February, and March 2026 to reconsider, providing relevant caselaw to ground its objections, but was put off by a promise from the District's counsel to respond "in the near future." *Id.* ¶¶ 35-36; Second Osborne Decl. ¶ 2. Carolyn then asked on July 1, 2026, if her permission to attend FCA's final meeting in June meant the District had reversed its "policy that no outside individuals are permitted for religious clubs," Riley Ex. G—and yet again District officials promised to respond and never did, McDonough Decl. ¶¶ 34-35. That necessitated this lawsuit weeks later.

The District tries to sweep all this aside as "attempt[s] to ameliorate … initial procrastination," Dist.Opp.36, but such time spent to avoid litigation is "the sort of behavior that courts ordinarily encourage," and FCA shouldn't "now be punished for seeking an amicable resolution before rushing to the courthouse," *Capitol Hill Baptist Church v. Bowser*, 496 F. Supp. 3d 284, 302 (D.D.C. 2020) (6 months); *Times Mirror Mags. v. L.V. Sports News*, 212 F.3d 157, 169 (3d Cir. 2000) (15 months); *FCA-DC*, 743 F. Supp. 3d at 94 (19 months); *FCA-San Jose*, 82 F.4th at 674-77 (24 months). To hold otherwise would "incentivize parties to skip attempting to resolve their disputes … and reward defendants who purportedly sought to negotiate but who were surreptitiously running out the clock," *Red Sense v. Bohuslavskiy*, 2025 WL 3539968, at *24 (D.N.J. Dec. 10, 2025)—just as how the District purported to be open to discussion here, before now seeking to hold Plaintiffs' litigation-avoidance efforts against them, *see*, *e.g.*, Mot. 9-12.[2]

---

[2] Given the State Defendants' "disavowal of any involvement in ... enforcing" the District's policy, State.Opp.1, an injunction against them doesn't currently appear necessary to prevent irreparable harm. This is not to say that Plaintiffs don't have standing for claims against the State Defendants. Those Defendants admit that Minus-Vincent has supervisory oversight of the District on behalf of the State on matters of compliance, that he advises the District's board regarding the lawful performance of its duties, and that he was not only aware of the District's unconstitutional actions but actually encouraged them. State Opp.2-3; Minus-Vincent Cert. ¶¶ 5-15. For purposes of relieving FCA from ongoing harm, though, it is enough for now that this Court can "take the [State] at its word and ... hold it to it." *Nat'l Women's Law Ctr. v. Off. of Mgmt. & Budget*, 358 F. Supp. 3d 66, 81 (D.D.C. 2019).

***Equities and public interest.*** The District doesn't dispute there's a strong public interest in protecting First Amendment rights. Mot. 37-38. It suggests instead that an injunction isn't in the public interest because "school shootings in America have become more rampant" and schools face liability for "sexual abuse." Dist.Opp.39.

The notion that restoring equal access for Plaintiffs would risk gun violence and sex abuse is, to put it mildly, irresponsibly speculative—which is of course "insufficient" to deny an injunction. *Fulton v. City of Philadelphia*, 593 U.S. 522, 541-42 (2021); *accord FCA-DC*, 743 F. Supp. 3d at 88. Carolyn (a respected Central alumna) and Ken (a 12-year volunteer Central baseball coach) complied with full District volunteer requirements, had been coming to District campuses for years without "a single concern" being raised about safety, and school officials and students alike "appreciate the support" that they provided and were "sorry" to see them go. Riley Ex. D at 2-3; Turnbull Ex. D (ECF 29-2) at 3 ("both got fingerprinted; had background checks completed; and have NJ Sub certification"). Regardless, if neutral volunteer-access regulations are insufficient to ensure safety at student-group meetings—which occur in a classroom accessible to all and under the supervision of faculty—then the answer is more safety regulations, not religious discrimination.

## CONCLUSION

The Court should grant Plaintiffs' motion for a preliminary injunction.

Dated: September 14, 2026

Respectfully submitted,

/s/ *Richard C. Osborne*
Richard C. Osborne
Daniel H. Blomberg*
Joseph C. Davis*
Amanda G. Dixon*
THE BECKET FUND FOR
RELIGIOUS LIBERTY
1919 Pennsylvania Ave. N.W.,
Ste. 400
Washington, DC 20006
(202) 955-0095
rosborne@becketfund.org

*Counsel for Plaintiffs*

**Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent to counsel of record for the parties by operation of the Court's electronic filing system. A copy of the foregoing will also be served on Defendant Rosetta Treece in her personal capacity via first-class U.S. Mail.

/s/ *Richard C. Osborne*
Richard C. Osborne