RECEIVED

SEP 18 2026

AT 8:30______________M
CLERK, U.S. DISTRICT COURT - DNJ

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**RELATED NEW JERSEY PUBLIC-SCHOOL AUTHORITY MATTERS**

**CHRISTIN HEAPS v. DELAWARE VALLEY REGIONAL HIGH SCHOOL BOARD OF EDUCATION, et al.**
Civil Action No. **3:24-cv-00107-GC-JBD**

**MARIA LEMA, et al. v. JENNIFER DAVENPORT, et al.**
Civil Action No. **3:26-cv-04682-RK-JTQ**

**MOMS FOR LIBERTY v. SCHOOL DISTRICT OF THE CHATHAMS BOARD OF EDUCATION, et al.**
Civil Action No. **2:26-cv-10863**

**FELLOWSHIP OF CHRISTIAN ATHLETES, et al. v. BOARD OF EDUCATION OF THE HOPEWELL VALLEY REGIONAL SCHOOL DISTRICT, et al.**
Civil Action No. **3:26-cv-10163-RK-TJB**

**MUSSAB ALI v. JERSEY CITY BOARD OF EDUCATION, et al.**
Civil Action No. **2:26-cv-05754-BRM-JBC**

---

**BRANDON MICHAEL HAYES,**
**APPEARING PRO SE AS PRESIDENT OF THE NATURAL LAW INSTITUTE,**

**MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF AND PROPOSED AMICUS CURIAE BRIEF OF BRANDON MICHAEL HAYES, APPEARING PRO SE AS PRESIDENT OF THE NATURAL LAW INSTITUTE**

**THE SEQUENCE OF LEGITIMATE PUBLIC-SCHOOL AUTHORITY**

**PARENTAL AGENCY · STUDENT AGENCY · INFORMATIONAL CUSTODY · RELIGIOUS ASSOCIATION · EQUAL ACCESS · CIVIC ACCESS · FUNCTIONAL NEXUS · INSTITUTIONAL LEGITIMACY**

---

**MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF**

Brandon Michael Hayes respectfully moves this Court for leave to file the accompanying proposed amicus curiae brief, appearing **pro se as President of the Natural Law Institute ("NLI")**.

Mr. Hayes submits this filing in his individual capacity as a citizen, researcher, and institutional founder presenting NLI's structural research concerning lawful authority, individual and parental agency, institutional stewardship, informational fidelity, constitutional classification, and the preservation of institutional legitimacy.

This filing constitutes both the request for leave and the proposed amicus curiae brief for which leave is requested.

There is no Federal Rule of Civil Procedure or District of New Jersey Local Civil Rule specifically governing district-court amicus participation. Courts in this District exercise broad discretion and have looked to the principles underlying Federal Rule of Appellate Procedure 29, considering whether the proposed amicus possesses a particular interest, offers timely and useful information, supplies analysis inadequately represented by the parties, and assists rather than duplicates the adversarial presentation. *Granillo v. FCA US LLC*, No. 16-153, 2018 WL 4676057, at *2 (D.N.J. Sept. 28, 2018); *United States v. Alkaabi*, 223 F. Supp. 2d 583, 592 (D.N.J. 2002).

The proposed brief satisfies that function.

The five proceedings identified above involve different plaintiffs, different policies, different constitutional doctrines, and materially different procedural postures. Yet each asks the judiciary to classify a recurring question concerning public-school power:

> **Who possesses authority, over whom, concerning what object, pursuant to what legal relationship, upon what information, for what governmental function, through what mechanism, and subject to what constitutional limit?**

The proposed brief offers a fixed decisional structure for answering that question without collapsing the matters into one claim or one political controversy.

The matters expose five distinguishable dimensions of public educational authority:

1. **HEAPS** — school stewardship, parental authority, confidentiality, and disclosure concerning a minor child;
2. **LEMA** — state guidance, local-board implementation, parental authority, and the distinction between state interest and local decisional mechanism;

3. **MOMS FOR LIBERTY** — parental notice, religious formation, student and parent speech, information control, and district policy;
4. **FELLOWSHIP OF CHRISTIAN ATHLETES** — religious association, student organization, equal access, and differential treatment of religious and secular groups;
5. **ALI** — public-board authority over a nonstudent adult, political participation, territorial exclusion, procedural notice, civic access, and proportional consequence.

The District has already recognized that closely related school-authority controversies need not be consolidated merely because they share state policies or constitutional themes. In July 2026, the Court denied the State Defendants' attempt to consolidate *Heaps* and *Lema*, expressly distinguishing their factual records, legal theories, forms of relief, and procedural trajectories. *Heaps v. Delaware Valley Regional High School Board of Education*, Civ. No. 24-107, ECF No. 139 (D.N.J. July 29, 2026).

That distinction demonstrates the usefulness of the present filing.

**Procedural consolidation and analytical commonality are different things.**

These actions may remain separate while benefiting from the same architecture for identifying the lawful boundary between individual, parent, student, association, school, board, and State.

WHEREFORE, proposed Amicus respectfully requests leave to file the accompanying brief and such consideration of the framework as fits the posture of the particular matter before the Court.

Respectfully submitted,

BH

Brandon Michael Hayes
Pro Se
President, Natural Law Institute
159 Indian Hill Street
West Newbury, Massachusetts 01985
brandon@hayeshaus.com
(617) 438-2049

Dated: September 14, 2026

---

**PROPOSED AMICUS CURIAE BRIEF**

**I. INTEREST OF PROPOSED AMICUS**

I am Brandon Michael Hayes, appearing pro se and serving as President of the Natural Law Institute ("NLI").

The Natural Law Institute is a constitutional research and public-interest institute examining the relationship between individual liberty, family authority, institutional responsibility, governmental power, and the structures required for lawful adjudication.

I submit this brief in my individual capacity as President of NLI to provide a common decisional architecture relevant across the related matters identified above.

The present New Jersey matters expose an unusually useful constitutional landscape.

Public schools and school boards simultaneously operate as:

- educators;
- custodians;
- temporary stewards of minors;
- public employers;
- government speakers;
- property administrators;
- regulators of student conduct;
- custodians of sensitive information;
- allocators of student opportunities;
- administrators of public forums;
- and governmental bodies exercising delegated state authority.

Those capacities coexist inside one institution.

They do not merge into one plenary power.

- Authority over a classroom does not itself establish authority over the parent-child relationship.
- Authority to protect a student's privacy does not itself establish authority to create a generalized information barrier between child and parent.
- Authority to prevent governmental establishment of religion does not itself establish authority to discriminate against religious organizations relative to comparable secular organizations.
- Authority to maintain school safety does not itself establish authority to exclude a citizen from every school property because that citizen participated in protected civic or political activity.
- And state policy does not relieve the local actor from identifying the constitutional authority supporting the mechanism the local actor actually adopts.

The proposed amicus therefore begins upstream of the individual doctrines.

Its purpose is classification.

---

## II. PRELIMINARY STATEMENT

The recurring constitutional failure across institutional litigation is **collapse**.

Distinct concepts are allowed to substitute for one another:

- **interest becomes authority;**
- **custody becomes ownership;**
- **confidentiality becomes concealment;**
- **student autonomy becomes parental nullification;**
- **parental authority becomes student nullification;**
- **anti-discrimination becomes authority for any chosen mechanism;**
- **Establishment Clause concern becomes unequal exclusion of religion;**
- **school safety becomes territorial control over unrelated civic conduct;**
- **complaint becomes proof;**
- **anticipated harm becomes demonstrated necessity;**
- **institutional preference becomes constitutional predicate.**

The Constitution requires a more exact sequence.

Public authority remains strongest when its source and boundary are visible.

The correct sequence is:

**PERSON**<br>
**→ AGENCY**<br>
**→ RELATIONSHIP**<br>
**→ AUTHORITY**<br>
**→ STEWARDSHIP**<br>
**→ OBJECT**<br>
**→ FIDELITY**<br>
**→ PROVENANCE**<br>
**→ INFORMATIONAL CUSTODY**<br>
**→ NOTICE**<br>
**→ DISCLOSURE / CONFIDENTIALITY**

**→ NEXUS**
**→ IMPAIRMENT**
**→ NECESSITY**
**→ ALTERNATIVE**
**→ EQUALITY**
**→ CONSEQUENCE**
**→ PROPORTIONALITY**
**→ REMEDY**

Each stage performs a distinct function.

No downstream stage supplies a missing upstream predicate.

That rule is the common architecture of the five matters.

---

## III. QUESTION PRESENTED

Whether courts examining public-school action ought preserve a fixed decisional sequence identifying:

1. the person whose interest is implicated;
2. the original holder or holders of agency;
3. the legally relevant relationship;
4. the source and scope of governmental authority;
5. the school's particular stewardship function;
6. the object of regulation;
7. the fidelity of the factual predicate;
8. the provenance of information relied upon;
9. who possesses informational custody;
10. what notice is constitutionally or legally material;
11. what information may lawfully be disclosed, withheld, or kept confidential;
12. the nexus between the regulated object and legitimate governmental function;
13. the actual or reasonably forecast impairment;
14. the necessity for intervention;
15. available alternatives;
16. whether comparable religious, secular, political, or other actors receive equal treatment;
17. the consequence imposed;
18. proportionality between demonstrated need and imposed burden; and
19. the remedy corresponding to the failure actually established.

## IV. SUMMARY OF ARGUMENT

The five New Jersey matters demonstrate why **authority must be classified before interests are balanced**.

In *Heaps*, the operative dispute concerns an applied factual sequence in which a public school allegedly recognized a minor student's asserted gender identity and withheld that information from her parent pursuant to state and local policy. The current pleading asserts substantive and procedural due-process claims and challenges the authority of school officials and the State to displace or obstruct parental knowledge concerning the child.

In *Lema*, multiple parents challenge state guidance and policies adopted across several New Jersey school districts permitting gender-identity-related decisions to occur without mandatory parental notice. The claim therefore moves from one applied parent-child-school relationship to the **state-to-local policy architecture itself**.

*Moms for Liberty v. School District of the Chathams* presents an even newer district-specific application involving Policy 5145.7. The complaint alleges burdens touching parental notice, religious formation, names and pronouns, facilities, athletics, outside referrals, and compelled or restricted expression. It is a prospective policy challenge; the Court must therefore distinguish what the policy permits from what has actually occurred to any particular student.

*Fellowship of Christian Athletes* changes the object completely. It alleges that Hopewell Valley barred outside adults from religious student clubs while allowing outside volunteers, mentors, and speakers to participate with comparable secular clubs. The claims invoke Free Exercise, Free Speech, Equal Protection, the Equal Access Act, and state anti-discrimination law.

Finally, *Ali* tests school-board power against a rights-bearing adult outside the ordinary student-parent relationship. The complaint alleges that the Jersey City Board of Education barred a former board president and political candidate from district property because of his connection to a student walkout, initially affecting his ability even to enter the school building serving as his polling place. A later consent order preserved voting access while the civil-rights case continued.

These matters concern different constitutional doctrines.

They nevertheless share one proposition:

> **The existence of a legitimate governmental interest does not itself identify the holder, object, mechanism, or lawful boundary of governmental authority.**

A court must determine each in order.

---

## V. PUBLIC-SCHOOL AUTHORITY IS RELATIONAL, NOT PLENARY

A school board does not possess "school authority" in the abstract.

It possesses specific delegated authorities arising from specific relationships.

- When governing employees, it acts as public employer.
- When directing students during the school day, it acts as educator and custodian.
- When protecting children against concrete danger, it acts in a protective stewardship capacity.
- When keeping student records, it acts as informational custodian.
- When administering extracurricular clubs, it acts as allocator of public educational opportunities and, often, public or limited-public forum access.
- When excluding persons from school property, it acts as governmental property administrator.
- When a school building becomes a polling location, public-school property intersects with a wholly separate civic function.

Each role changes the relevant constitutional analysis.

Accordingly:

**RELATIONSHIP → AUTHORITY → OBJECT**

must be determined before:

**INTEREST → BURDEN → BALANCING.**

Otherwise, broad institutional interests swallow the boundaries that make constitutional government intelligible.

---

## VI. THE CHILD, THE PARENT, AND THE SCHOOL ARE THREE DISTINCT LEGAL ACTORS

The parental-policy cases cannot be resolved by pretending that only two actors exist.

There are three:

**CHILD**
**PARENT**
**SCHOOL / STATE**

- Each possesses interests.
- Each occupies a different relationship.
- Each exercises a different form of agency.
- The existence of student interests does not erase parental authority.
- The existence of parental authority does not erase the constitutional personhood of the student.
- The existence of both does not transform the school into the owner of the dispute.

That triadic structure matters.

The constitutional tradition reflected in *Meyer v. Nebraska*, 262 U.S. 390 (1923), *Pierce v. Society of Sisters*, 268 U.S. 510 (1925), *Wisconsin v. Yoder*, 406 U.S. 205 (1972), and *Troxel v. Granville*, 530 U.S. 57 (2000), recognizes a substantial and protected parental role in directing children's upbringing and formation.

*Mahmoud v. Taylor*, 606 U.S. ___ (2025), further confirms that public education does not make constitutionally significant religious formation disappear merely because the government acts through curriculum.

And *Mirabelli v. Bonta*, 607 U.S. 492 (2026), altered the contemporary litigation landscape when the Supreme Court, on an emergency application, vacated the Ninth Circuit's stay as to the parent applicants challenging school gender-transition confidentiality policies. The procedural posture matters: *Mirabelli* arose on an interlocutory emergency application rather than a final conventional merits appeal. Its importance lies in the Court's treatment of parental injury and the likelihood of success sufficient to restore the district-court protection while appellate litigation continued.

Thus, the correct question is not:

**parent or child?**

It is:

**Which actor possesses which authority concerning which object, and what allows government to alter the default allocation?**

---

## VII. STEWARDSHIP IS REAL AUTHORITY, BUT STEWARDSHIP IS BOUNDED

A school entrusted with a child possesses substantial operational authority.

- It may teach.
- It may protect.
- It may supervise.
- It may maintain order.
- It may respond to genuine emergencies.
- It may protect sensitive information where law requires confidentiality.
- It may recognize the student's own constitutional interests.

Those powers become most legitimate when their source and boundary are clear.

**Stewardship is therefore neither impotence nor plenary custody.**

It is function-bound authority.

The central distinction is:

**STEWARDSHIP**

versus

**DISPLACEMENT.**

A steward acts for a defined purpose within a bounded relationship.

Displacement occurs when the institution begins exercising decisional power belonging presumptively to another actor without identifying the legal predicate permitting that transfer.

The parental-policy cases require the Court to identify that boundary explicitly.

---

## VIII. INFORMATIONAL CUSTODY IS A FORM OF GOVERNMENTAL POWER

The New Jersey cases reveal a particularly modern authority problem:

**control of information can operationally control a right without formally abolishing it.**

A parent may possess a constitutional role in directing a child's upbringing.

But if government controls the information necessary to exercise that role, government can effectively determine when the right becomes usable.

The sequence therefore requires:

**FIDELITY**
**→ PROVENANCE**
**→ INFORMATIONAL CUSTODY**
**→ NOTICE**
**→ DISCLOSURE / CONFIDENTIALITY.**

- **Fidelity** asks what the student actually communicated or requested.
- **Provenance** asks where the relevant information originated and who generated it.
- **Informational custody** asks which government official or institution possesses it.
- **Notice** asks which actors need knowledge before meaningful agency can be exercised.
- **Disclosure/confidentiality** asks whether law permits, requires, or forbids transmission to another actor.

These are separate inquiries.

A policy cannot lawfully answer the final question merely by skipping the preceding ones.

---

## IX. CONFIDENTIALITY AND CONCEALMENT MUST REMAIN DISTINCT

Confidentiality serves legitimate purposes.

- Medical information may be confidential.
- Counseling communications may carry statutory or professional protections.
- Student records may be protected from general publication.
- A child may possess legitimate privacy interests.
- An institution may confront circumstances where immediate disclosure creates a demonstrable safety concern.

But **confidentiality is relational.**

- Information can be confidential against the public while remain disclosable to a parent.
- It can be confidential against classmates while legally accessible to a guardian.
- It can be temporarily restricted because of an identified risk while subject to later disclosure.

Thus, courts ought ask:

- **Confidential from whom?**
- **By what authority?**
- **For what duration?**
- **Because of what identified risk?**
- **Subject to what review?**

Without those questions, "confidentiality" can become a word that conceals the allocation of authority rather than explaining it.

## X. HEAPS: THE APPLIED CASE TESTS THE SCHOOL'S AUTHORITY TO INTERPOSE ITSELF WITHIN AN EXISTING PARENT-CHILD RELATIONSHIP

*Heaps* supplies the applied factual limb.

The current operative pleading follows earlier litigation over Delaware Valley Regional High School's handling of a student's request to use a male name and pronouns at school without notifying the student's father. Earlier pleadings alleged that school personnel facilitated that social transition while purposely withholding it from him pursuant to board policy and state guidance.

The Second Amended Complaint filed April 22, 2026 now alleges violations of substantive and procedural due process and other Fourteenth Amendment interests and seeks declaratory and monetary relief. The plaintiff and child subsequently moved to Florida, altering the remedial posture but leaving the claimed past governmental conduct and its constitutional classification at issue.

The proper decisional sequence is:

**CHILD**
**→ PARENT**
**→ SCHOOL**
**→ STUDENT REQUEST**
**→ INFORMATIONAL CUSTODY**
**→ PARENTAL KNOWLEDGE**
**→ CLAIMED CONFIDENTIALITY**
**→ SOURCE OF AUTHORITY**
**→ SAFETY / PRIVACY PREDICATE**
**→ NECESSITY**

**→ ALTERNATIVE**
**→ CONSEQUENCE.**

The constitutional problem begins where government decides **which rights-bearing actor will be excluded from information and decision-making**.

The school must then identify the authority authorizing that exclusion.

---

## XI. A SCHOOL'S DESIRE TO PROTECT A STUDENT DOES NOT ELIMINATE THE NEED TO IDENTIFY THE PROTECTIVE PREDICATE

Government frequently possesses a compelling protective purpose.

That purpose must remain attached to evidence.

Thus:

**POTENTIAL HARM**

and

**DEMONSTRATED OR REASONABLY IDENTIFIED RISK**

are different classifications.

If a student faces a specific risk of abuse, violence, abandonment, or another legally cognizable danger, the State possesses established protective mechanisms.

Those mechanisms exist precisely because child protection involves serious authority.

The constitutional danger appears when a generalized class-wide prediction silently replaces individualized protection:

**some children might face harm if parents learn X**

becomes

**therefore parents generally may be excluded from X.**

That transition requires legal examination.

The greater the governmental intervention into the parent-child relationship, the more important it becomes to identify the factual predicate that activates the intervention.

---

## XII. LEMA: THE SAME AUTHORITY QUESTION MOVES UPSTREAM FROM ONE FAMILY TO THE STATE-LOCAL POLICY CHAIN

*Lema v. Davenport* supplies a different posture.

The plaintiffs are parents of children enrolled in several New Jersey public-school districts. They challenge NJDOE guidance, the Attorney General's interpretation of New Jersey anti-discrimination law, and policies adopted by multiple school boards permitting student gender-identity matters to occur without mandatory parental notice.

Unlike *Heaps*, the *Lema* allegations are substantially policy-facing and prospective.

That distinction matters.

The Court must separate:

**WHAT THE POLICY AUTHORIZES**

from

**WHAT GOVERNMENT HAS DONE TO A PARTICULAR CHILD.**

But the absence of an applied injury does not eliminate the structural question.

It changes its location.

The sequence becomes:

**STATE INTEREST**
**→ STATE LAW**
**→ NJDOE GUIDANCE**
**→ ATTORNEY GENERAL INTERPRETATION**
**→ LOCAL BOARD POLICY**
**→ SCHOOL-LEVEL DISCRETION**
**→ STUDENT REQUEST**
**→ INFORMATIONAL CUSTODY**
**→ PARENTAL NOTICE / NON-NOTICE**
**→ CONSEQUENCE.**

Every arrow matters.

- A local school cannot manufacture constitutional authority merely by saying that the State required the policy.
- The State cannot establish the necessity of a specific local mechanism merely by identifying a legitimate anti-discrimination interest.
- And guidance does not perform the same legal function as statute, regulation, constitutional command, or adjudicated obligation.

The Court must locate the warrant at each stage.

---

## XIII. HEAPS AND LEMA DEMONSTRATE WHY COMMON ARCHITECTURE DOES NOT REQUIRE CONSOLIDATION

This District has already confronted the relationship between these cases.

State Defendants sought consolidation under Rule 42(a).

The Court declined.

Judge Castner identified material differences in plaintiffs, theories, remedies, applied facts, and procedural history and denied consolidation without prejudice.

That ruling reinforces the present method.

The constitutional system benefits from:

**SEPARATE CASES**
+
**COMMON CLASSIFICATION**
+
**CASE-SPECIFIC APPLICATION.**

One decisional structure does not erase factual individuality.

It makes factual individuality legible.

*Heaps* asks what happened within one parent-child-school relationship.

*Lema* asks what constitutional boundary governs multiple policies before application.

The same sequence reveals why those questions differ.

---

## XIV. MOMS FOR LIBERTY v. CHATHAMS: THE DISTRICT-SPECIFIC POLICY ADDS NOTICE, SPEECH, FACILITIES, REFERRAL, AND RELIGIOUS FORMATION

The newest New Jersey matter sharpens the architecture further.

*Moms for Liberty v. School District of the Chathams Board of Education*, No. 2:26-cv-10863, challenges Policy 5145.7, titled "Gender Identity and Expression." The complaint was filed in August 2026 and alleges violations of the First Amendment and Fourteenth Amendment.

According to the complaint, the challenged policy permits school personnel to recognize a student's asserted gender identity and different name or pronouns without automatic parental notification; addresses access to facilities and athletics; permits referrals to outside support organizations; and contains provisions plaintiffs contend burden parents' and students' speech and religious exercise.

The Court must carefully preserve the distinction between **policy permission and historical fact**.

The present complaint includes parent-member standing theories and prospective allegations. Public reporting and examination of the verified complaint indicate that no particular plaintiff child is alleged to have already undergone the full transition sequence challenged by the suit.

That makes classification even more important.

**The policy-facing sequence is:**

**POLICY TEXT**
**→ ACTUAL LEGAL SOURCE**
**→ DELEGATED DISCRETION**
**→ TRIGGERING STUDENT REQUEST**
**→ COUNSELOR AS DECISIONMAKER**
**→ INFORMATIONAL CUSTODY**
**→ PARENTAL NOTICE**
**→ SPEECH REQUIREMENTS**
**→ FACILITIES / ATHLETICS CONSEQUENCE**
**→ OUTSIDE REFERRAL**
**→ REVIEW.**

The Court can examine each disputed mechanism independently.

---

## XV. GOVERNMENT MAY PROTECT AGAINST DISCRIMINATION WITHOUT TURNING ANTI-DISCRIMINATION INTO PLENARY AUTHORITY

New Jersey possesses legitimate and substantial interests in preventing unlawful discrimination.

That proposition identifies a governmental object.

It does not decide every mechanism.

The decisional error to avoid is:

**ANTI-DISCRIMINATION INTEREST**
**→ THEREFORE ANY POLICY DESIGNED TO ADVANCE IT IS LAWFUL.**

The constitutional inquiry requires additional stages:

- **What conduct constitutes discrimination?**
- **What actor is regulated?**
- **What mechanism is used?**
- **Whose constitutional interests are burdened?**
- **What nexus connects the mechanism to the anti-discrimination objective?**
- **What alternatives preserve both interests?**
- **What consequence follows?**

This is especially important where the mechanism simultaneously touches:

- parental decision-making;
- student privacy;
- religious exercise;
- compelled or restricted speech;
- sports or facilities;
- and confidential information.

A court preserves anti-discrimination law by accurately identifying the point at which it operates.

---

## XVI. PARENTAL AUTHORITY AND STUDENT AGENCY CAN COEXIST WITHOUT MAKING THE SCHOOL SOVEREIGN OVER THE CONFLICT

The cases should resist a false binary.

One position says:

**Parent always controls.**

Another says:

**Student identity or privacy always controls.**

Government then appears as the necessary arbiter between two absolutisms.

The constitutional structure is more exact.

- Children are rights-bearing persons whose maturity and circumstances matter.
- Parents remain the presumptive holders of substantial authority and responsibility over minor children.
- Schools possess operational and protective authority within the educational relationship.

The question is therefore **classification and boundary**, not slogan.

A useful sequence is:

**CHILD'S INTEREST**
+
**PARENT'S AUTHORITY AND DUTY**
+
**SCHOOL'S STEWARDSHIP FUNCTION**
+
**IDENTIFIED RISK**
+
**LEGAL SOURCE**

**→PERMISSIBLE GOVERNMENTAL RESPONSE.**

Remove one input and the conclusion may change.

That makes the matter decidable.

---

## XVII. FELLOWSHIP OF CHRISTIAN ATHLETES: EQUAL STEWARDSHIP REQUIRES LIKE ACCESS FOR LIKE FUNCTIONS

*Fellowship of Christian Athletes v. Board of Education of the Hopewell Valley Regional School District*, No. 3:26-cv-10163-RK-TJB, supplies the religious-association arm.

FCA alleges that after a third-party complaint, Hopewell Valley adopted a rule categorically excluding outside adults from religious student clubs while continuing to allow outside mentors, volunteers, and speakers to participate with secular organizations. FCA invokes the First Amendment, Equal Protection, the Equal Access Act, and New Jersey law.

The constitutional structure is unusually clean:

**STUDENT ORGANIZATION**
**→ SCHOOL-CREATED FORUM / CLUB PROGRAM**
**→ RELIGIOUS OR SECULAR CHARACTER**
**→ OUTSIDE VOLUNTEER**
**→ SCHOOL RULE**
**→ COMPARATOR**
**→ GOVERNMENTAL JUSTIFICATION**
**→ EQUAL ACCESS**
**→ CONSEQUENCE.**

The key classification is:

**FUNCTION**

not

**LABEL.**

If outside adults perform materially comparable mentoring, speaking, advising, or support functions for secular organizations, the school must identify why the religious identity of another organization materially changes the lawful rule.

---

## XVIII. ESTABLISHMENT CONCERNS DO NOT THEMSELVES AUTHORIZE RELIGIOUS DISCRIMINATION

Public schools must obey the Establishment Clause.

But avoiding establishment and suppressing religion are different governmental acts.

The Supreme Court has repeatedly rejected the proposition that government avoids establishment by disadvantaging religious expression otherwise eligible for a neutral program or forum. See, e.g., *Good News Club v. Milford Central School*, 533 U.S. 98 (2001); *Lamb's Chapel v. Center Moriches Union Free School District*, 508 U.S. 384 (1993); *Rosenberger v. Rector & Visitors of University of Virginia*, 515 U.S. 819 (1995).

The relevant sequence is:

**FORUM**
**→ ELIGIBILITY**
**→ COMPARATOR**
**→ FUNCTION**
**→ NEUTRAL RULE**
**→ RELIGIOUS CLASSIFICATION**
**→ DIFFERENTIAL TREATMENT**
**→ JUSTIFICATION.**

A generalized concern that religion is present cannot itself do all the legal work.

The school must identify the function it believes creates an Establishment Clause problem.

- Is the adult directing the club?
- Proselytizing under school authority?
- Acting as a school agent?
- Receiving preferential access unavailable to others?

Those factual predicates matter.

If the same function is tolerated for secular organizations, the comparator becomes constitutionally significant.

---

## XIX. THIRD-PARTY COMPLAINT DOES NOT BECOME GOVERNMENTAL AUTHORITY

*FCA* also exposes an information-provenance problem.

According to the complaint and FCA's account, the policy change followed a complaint by the Freedom From Religion Foundation concerning adult participation in FCA meetings.

That sequence requires separation:

**THIRD-PARTY COMPLAINT**
**→ GOVERNMENT RECEIVES INFORMATION**
**→ GOVERNMENT INVESTIGATES**
**→ GOVERNMENT CLASSIFIES LEGAL DUTY**
**→ GOVERNMENT ACTS.**

A complainant can trigger governmental review.

A complainant does not supply governmental authority.

The same rule applies across every case in this package.

- **Complaint is notice.**
- **Notice triggers examination.**
- **Examination identifies authority.**
- **Authority governs action.**

Collapsing those stages allows organized pressure to substitute for law.

---

## XX. ALI: SCHOOL AUTHORITY OVER A NONSTUDENT ADULT REQUIRES AN IDENTIFIABLE TERRITORIAL AND FUNCTIONAL NEXUS

*Ali v. Jersey City Board of Education*, No. 2:26-cv-05754-BRM-JBC, presents a different relationship entirely.

Ali is an adult citizen, former school-board president, and political figure.

His complaint alleges that the Jersey City Board of Education barred him from district property after accusing him of encouraging students to attend a political walkout during instructional hours. The Board's resolution allegedly asserted student-safety and code-of-conduct concerns and originally prohibited him from school property absent prior permission, while preserving attendance at public board meetings.

The restriction also intersected with an independent civic function because Ali's polling place was located in a school. Following suit, the Board amended the restriction and a federal consent order protected his access to vote while litigation continued.

This case exposes another authority sequence:

**ADULT CITIZEN**
**→ POLITICAL SPEECH / ASSOCIATION**

RECEIVED
SEP 18 2026
AT 8:30__________M
CLERK, U.S. DISTRICT COURT - DNJ

**→ STUDENT ACTION**
**→ ATTRIBUTION**
**→ SCHOOL SAFETY CLAIM**
**→ SCHOOL PROPERTY**
**→ TERRITORIAL EXCLUSION**
**→ PUBLIC FORUM / CIVIC FUNCTION**
**→ NOTICE AND HEARING**
**→ DURATION**
**→ EXCEPTIONS**
**→ CONSEQUENCE**
**→ PROPORTIONALITY.**

The school undoubtedly possesses authority to protect students and school property.

The constitutional question lies in the transition from:

**student-protection interest**

to

**power to exclude a particular adult from public property because of political activity attributed to him.**

That transition requires a demonstrated nexus.

---

## XXI. TERRITORIAL AUTHORITY MUST REMAIN ATTACHED TO TERRITORIAL FUNCTION

A school board's physical-control authority is substantial.

- It may restrict access to protect students.
- It may remove disruptive persons.
- It may regulate building use.
- It may establish security requirements.

But public ownership does not create unlimited territorial authority.

The character of school property changes depending upon the function occurring there.

- A classroom during instruction is one object.
- A public board meeting is another.

- A polling location during an election implicates an additional sovereign function.
- A parking lot may present another.
- A citizen's constitutional status likewise changes depending upon the activity.

Thus:

**PROPERTY**
**→ FUNCTION**
**→ FORUM**
**→ PERSON**
**→ CONDUCT**
**→ NEXUS**
**→ RESTRICTION.**

An institution cannot reason backward:

**we own or control the building**
**→ therefore any exclusion is constitutionally sufficient.**

Control identifies the administrator.

It does not complete the constitutional analysis.

---

## XXII. ALI ALSO REQUIRES INFORMATIONAL FIDELITY AND ATTRIBUTION

The *Ali* complaint alleges that the Board attributed to Ali responsibility for encouraging students to leave school and for representations concerning consequences, while Ali disputes important aspects of those allegations. The complaint further alleges that board discussion referred to social-media posts without producing proof establishing their provenance or attribution.

That makes the familiar sequence relevant again:

- **WHAT WAS SAID?**
- **WHO SAID IT?**
- **TO WHOM?**
- **WHO CAUSED THE STUDENT ACTION?**
- **WHAT DID THE SCHOOL KNOW?**
- **WHAT WAS INFERRED?**
- **WHAT FUNCTION WAS IMPAIRED?**
- **WHAT CONSEQUENCE FOLLOWED?**

Governmental consequence must remain attached to properly attributed conduct.

Otherwise political controversy itself can become the evidence used to restrict the controversial speaker.

---

### XXIII. THE FIVE CASES REVEAL FIVE DIFFERENT OBJECTS OF PUBLIC-SCHOOL POWER

| Matter | Relationship | Object | Principal Constitutional Dimension |
|---|---|---|---|
| **Heaps** | Parent ↔ child ↔ school | Applied informational concealment / social transition | Due process / parental authority |
| **Lema** | Parents ↔ State ↔ multiple school boards | State guidance and local confidentiality policies | Due process / Free Exercise / delegated authority |
| **Moms for Liberty** | Parents/students ↔ district | Notice, names/pronouns, facilities, referral, speech | Free Exercise / Free Speech / parental authority |
| **FCA** | Religious students/organization ↔ district | Adult mentors and extracurricular access | Free Exercise / Free Speech / Equal Protection / Equal Access Act |
| **Ali** | Adult citizen ↔ school board | Territorial exclusion, political activity, civic access | First Amendment / due process / proportionality |

The common denominator is not ideology.

It is **governmental authority**.

---

### XXIV. THE FIXED DECISIONAL SEQUENCE

The Court can use the following finite sequence across every matter.

**1. PERSON**

Whose liberty, information, speech, relationship, association, property access, or religious exercise is burdened?

**2. AGENCY**

Who possesses the original decisional authority concerning that object?

- Parent?
- Student?
- Adult citizen?
- Religious association?
- Government?

**3. RELATIONSHIP**

What legal relationship connects the rights-holder and government?

- Parent-child-school?
- Student-school?
- Club-school?
- Citizen-board?

**4. AUTHORITY**

What constitutional, statutory, regulatory, contractual, or recognized common-law source authorizes government to act?

**5. STEWARDSHIP**

Is the school acting as educator, custodian, protector, property administrator, forum administrator, or information custodian?

**6. OBJECT**

What precisely is being regulated?

- Information?
- Pronouns?
- Participation?
- Religious association?

- Physical access?
- Political activity?

**7. FIDELITY**

What actually occurred?

What does the operative policy actually say?

What did the person actually communicate?

**8. PROVENANCE**

Who created the information?

Who supplied the complaint?

Who attributed the conduct?

**9. INFORMATIONAL CUSTODY**

Who possesses the information necessary for another rights-holder to exercise agency?

**10. NOTICE**

Who knew what, and when?

Could the affected person exercise the relevant right without notice?

**11. DISCLOSURE / CONFIDENTIALITY**

Against whom is information protected?

- By what authority?
- For what purpose?
- For what duration?

**12. NEXUS**

How does the regulated conduct materially affect a lawful school function?

**13. IMPAIRMENT**

What function is actually impaired or reasonably predicted to be impaired?

**14. NECESSITY**

Why is governmental intervention required?

**15. ALTERNATIVE**

What materially available mechanism preserves the governmental objective while differently burdening constitutional interests?

**16. EQUALITY**

How are materially comparable actors treated?

- Religious versus secular club?
- One political speaker versus another?
- One family relationship versus another?

**17. CONSEQUENCE**

What complete burden follows?

- Loss of parental information?
- Suppressed association?
- Exclusion from property?
- Discipline?

**18. PROPORTIONALITY**

Does the imposed consequence correspond to the demonstrated need?

**19. REMEDY**

What correction restores the lawful boundary while preserving legitimate governmental function?

---

## XXV. DECISIONAL BINARIES

The same structure becomes highly operational when expressed as binaries.

**BINARY ONE — ORIGINAL AGENCY**

Did the affected individual or parent possess the relevant agency before the school entered the relationship?

**YES / NO**

If yes, school involvement requires identification of the authority altering that baseline.

---

**BINARY TWO — GOVERNMENTAL ROLE**

Is the school acting as:

**educator / custodian / protector / forum administrator / property administrator / information custodian / employer / government speaker?**

The role must be fixed.

---

**BINARY THREE — OBJECT**

Has the government identified the exact object of regulation?

**YES / NO**

A student request is not identical to medical treatment.

A pronoun is not identical to a sports-placement decision.

Confidentiality is not identical to nondisclosure from every actor.

A student walkout is not identical to an adult citizen's political expression.

---

**BINARY FOUR — LEGAL SOURCE**

Does the claimed governmental power arise from an identifiable legal source?

**YES / NO**

Guidance, recommendation, policy, statute, constitutional command, and professional judgment occupy different levels of authority.

---

**BINARY FIVE — INFORMATION**

Has the institution preserved fidelity and provenance?

**YES / NO**

If attribution is uncertain, governmental consequence cannot outrun the evidentiary predicate.

---

**BINARY SIX — PARENTAL NOTICE**

Does meaningful exercise of the asserted parental right require information the school controls?

**YES / NO**

If yes, nondisclosure itself becomes constitutionally operative.

---

**BINARY SEVEN — SAFETY**

Is nondisclosure or restriction based upon an identified safety predicate?

**YES / NO**

A generalized possibility and an individualized risk are different classifications.

---

**BINARY EIGHT — EQUALITY**

Is a religious, political, or other protected actor treated materially differently from a comparable secular or unprotected actor performing the same function?

**YES / NO**

If yes, the government must identify the legally sufficient basis for differential treatment.

---

**BINARY NINE — FUNCTIONAL NEXUS**

Has the government connected the protected activity to impairment of an actual school function?

**YES / NO**

---

**BINARY TEN — NECESSITY**

Was the selected intervention necessary to protect that function?

**YES / NO**

---

**BINARY ELEVEN — ALTERNATIVE**

Was a materially available less burdensome or more neutral mechanism available?

**YES / NO**

---

**BINARY TWELVE — PROPORTIONALITY**

Does the consequence correspond to the demonstrated impairment?

**YES / NO**

---

## XXVI. THE COMMON FAILURE IS CATEGORY COLLAPSE

Placed together, the five cases expose repeatable category errors.

**HEAPS**

**confidentiality** can become **parental exclusion** without fixing the predicate authorizing exclusion.

**LEMA**

**state policy interest** can become **local constitutional authority** without identifying the legal transfer between them.

**MOMS FOR LIBERTY**

**anti-discrimination** can become a universal answer to questions of **notice, religious formation, speech, facilities, and outside referral**.

**FCA**

**Establishment Clause concern** can become **religion-specific exclusion** without a functionally equivalent secular comparator analysis.

**ALI**

**student safety** can become **territorial exclusion of an adult political actor** without preserving attribution, process, forum, duration, and proportionality.

The cure is not a preferred ideological result.

The cure is classification.

---

## XXVII. GOVERNMENTAL INTEREST AND GOVERNMENTAL AUTHORITY MUST REMAIN DISTINCT

This distinction is central.

- New Jersey may possess an important interest in protecting transgender students from discrimination.
- Hopewell Valley may possess an important interest in avoiding unconstitutional school sponsorship of religion.
- Jersey City may possess an important interest in student safety and uninterrupted instruction.

These interests can be substantial.

But:

> **An important governmental objective identifies what government seeks to accomplish. Authority identifies what government may lawfully do to accomplish it.**

Those are separate inquiries.

Conflating them converts every compelling public purpose into a source of unbounded means.

Constitutional scrutiny exists precisely to prevent that conversion.

---

## XXVIII. NOTICE IS THE OPERATIONAL WARRANTY OF A RIGHT

The parental cases particularly demonstrate the importance of notice.

A right may exist formally while becoming unusable operationally.

Suppose a parent possesses a protected role concerning religious upbringing.

If government possesses the triggering information and never reveals it, the parent cannot exercise the right before the relevant event occurs.

The formal right remains.

Its operational capacity disappears.

Thus:

**RIGHT**
+
**INFORMATION**
+
**TIMELY NOTICE**

**→ OPERATIONAL AGENCY.**

This principle reaches beyond parental litigation.

Ali's complaint alleges a sweeping property ban was imposed without adequate prior notice or an opportunity to respond.

FCA alleges a religion-specific access limitation persisted despite repeated attempts to identify and resolve its legal basis.

Transparency is therefore not ancillary.

It is the mechanism through which rights-holders can determine what authority is being exercised against them and respond through law.

---

## XXIX. TRANSPARENCY IS THE WARRANTY OF PUBLIC AUTHORITY

Every institution exercising public power ought be capable of answering:

- **Who is acting?**
- **In what legal capacity?**
- **Under what authority?**
- **Over whom?**
- **Concerning what object?**
- **Upon what facts?**
- **From what provenance?**
- **Who controls the relevant information?**
- **Who received notice?**
- **What governmental function is threatened?**
- **What evidence establishes the threat?**
- **Why is this mechanism necessary?**
- **What comparable actors receive different treatment?**
- **What alternatives exist?**
- **What consequence follows?**
- **What remedy exists if the factual or legal predicate is wrong?**

An institution capable of answering those questions preserves legitimacy even when its decisions remain controversial.

An institution that cannot answer them has identified the location of the structural defect.

---

## XXX. INFORMATIONAL PROVENANCE PREVENTS THIRD-PARTY REACTION FROM BECOMING GOVERNMENTAL POWER

Modern institutions often act after:

- complaints;
- activist correspondence;
- media reports;
- social-media amplification;
- advocacy demands;
- parent complaints;
- student reports;
- or political controversy.

Those inputs can be relevant.

They remain inputs.

The constitutional sequence is:

**THIRD-PARTY INFORMATION**
**→ GOVERNMENT RECEIVES**
**→ GOVERNMENT VERIFIES**
**→ GOVERNMENT IDENTIFIES AUTHORITY**
**→ GOVERNMENT IDENTIFIES FUNCTIONAL NEXUS**
**→ GOVERNMENT ACTS.**

Skipping verification or authority creates a dangerous loop:

**complaint causes institutional concern**
**→ concern becomes proof of necessity**
**→ necessity becomes authority**
**→ authority punishes the person complained about.**

The louder the information environment becomes, the more important fidelity and provenance become.

---

## XXXI. EQUAL TREATMENT IS AN AUTHORITY CHECK, NOT MERELY A REMEDY

Comparators reveal what government is actually regulating.

- If religious clubs alone cannot invite outside mentors while secular clubs can, the distinction suggests religion rather than adult participation may be doing the regulatory work.

- If one political actor is excluded for conduct tolerated from others, the comparator reveals potential viewpoint or selective-enforcement concerns.
- If student privacy is treated differently depending upon the ideological content of the information, the comparator becomes relevant to constitutional neutrality.

Equality therefore performs an upstream diagnostic function:

**LIKE FUNCTION**
\+
**DIFFERENT TREATMENT**

**→ IDENTIFY THE CLASSIFICATION.**

Once the classification is identified, the appropriate doctrine follows.

---

## XXXII. PROPORTIONALITY PREVENTS A VALID INTEREST FROM PRODUCING AN INVALID CONSEQUENCE

Even where government establishes authority and necessity, consequence remains a separate stage.

A school can possess authority to correct conduct without possessing authority to impose every imaginable penalty.

The relevant inquiry is:

**IMPAIRMENT**
**→ REQUIRED CORRECTION**
**→ CONSEQUENCE.**

In *Ali*, for example, a concern about instructional-hour student walkouts must be distinguished from an indefinite or district-wide exclusion affecting unrelated civic activity.

In *FCA*, a legitimate desire to ensure student leadership must be distinguished from categorical exclusion of outside religious mentors while secular comparators remain available.

In parental-policy litigation, a legitimate privacy or safety concern must be distinguished from generalized exclusion of parents from information concerning their children.

Proportionality preserves government authority by preventing its remedy from exceeding its predicate.

---

## XXXIII. THE COURT NEED NOT ADOPT A NEW CONSTITUTIONAL DOCTRINE

The proposed architecture does not require creation of a new cause of action.

Existing doctrine already supplies the governing law.

For parental authority and religious formation:

*Meyer*, *Pierce*, *Yoder*, *Troxel*, *Mahmoud*, and the present procedural signal from *Mirabelli*.

For student and religious expression:

*Good News Club*, *Lamb's Chapel*, *Rosenberger*, the Equal Access Act, Free Exercise, Free Speech, and Equal Protection doctrine.

For political participation and public access:

ordinary First Amendment, forum, due-process, and equal-treatment principles.

The framework merely requires courts to ask those doctrinal questions in an order that prevents one factual category from silently substituting for another.

It therefore produces a modest judicial rule:

> **Classify first. Apply doctrine second. Balance only the interests the record actually establishes.**

---

## XXXIV. APPLICATION TO HEAPS

The Court can identify:

1. what information school personnel possessed;
2. who supplied it;
3. what actions school officials took;
4. what information was withheld from the parent;
5. which policy or law purportedly authorized withholding;

6. whether the withholding rested upon an individualized safety predicate or a general policy;
7. what student interest was protected;
8. what parental authority was burdened;
9. what alternatives existed;
10. and what remedy corresponds to any constitutional failure proven.

The resulting adjudication can recognize both student interests and parental rights without treating either as an abstraction.

---

## XXXV. APPLICATION TO LEMA

The Court can separate:

**NJDOE guidance**

from

**Attorney General interpretation**

from

**board policy**

from

**school-level discretion**

from

**actual application.**

That sequence is essential because each layer possesses a different legal source.

The Court can then determine which plaintiffs challenge which layer, through which cause of action, and upon what present injury.

The architecture thereby strengthens standing, merits, and remedy analysis simultaneously by preventing them from collapsing into one general dispute over New Jersey gender policy.

---

## XXXVI. APPLICATION TO MOMS FOR LIBERTY

The Court can separately evaluate the challenged features of Policy 5145.7:

- nondisclosure;
- use of names and pronouns;
- asserted compelled speech;
- facilities;
- athletics;
- outside referrals;
- parental religious formation;
- and district statements concerning purported state requirements.

Each object receives its own authority and nexus inquiry.

The Court thereby avoids allowing the phrase "gender identity policy" to perform the work of seven different constitutional analyses.

---

## XXXVII. APPLICATION TO FELLOWSHIP OF CHRISTIAN ATHLETES

The Court can identify:

1. the nature of the student-club forum;
2. the role permitted to outside adults;
3. materially comparable secular organizations;
4. the religious classification triggering exclusion;
5. the precise Establishment Clause concern asserted;
6. whether that concern is functionally present;
7. whether the rule is neutral and generally applicable;
8. Equal Access Act requirements;
9. alternatives preserving student leadership without religion-specific disadvantage;
10. and the appropriate prospective remedy.

That sequence preserves the school's legitimate concern with student-led clubs while requiring neutrality.

---

## XXXVIII. APPLICATION TO ALI

The Court can classify:

1. the conduct actually attributable to Ali;
2. the relationship between that conduct and the student walkout;
3. the Board's identified safety and instructional interests;
4. the geographic extent of the restriction;
5. the duration of exclusion;
6. the procedural notice afforded;
7. the functions occurring on affected school property;
8. the intersection with voting and board-meeting access;
9. less restrictive alternatives;
10. and proportionality.

That analysis protects schools against genuine interference while protecting public educational institutions from becoming territorial authorities over political disagreement unrelated to school function.

---

## XXXIX. PROPOSED CORE HOLDING

Proposed Amicus respectfully offers the following common formulation:

> **Public-school authority is relational, object-specific, and bounded by the governmental function from which it derives. Before materially burdening parental direction, student agency, religious exercise, expressive association, political participation, informational access, or civic access, a public educational institution must accurately classify the legal relationship and regulated object; identify the source and scope of its authority; preserve the fidelity, provenance, attribution, and custody of information relied upon; provide constitutionally material notice; identify any lawful basis for disclosure or nondisclosure; establish the required nexus between the protected interest and impairment of legitimate governmental function; treat materially comparable actors according to constitutionally permissible classifications; account for available alternatives; and impose no consequence disproportionate to the necessity demonstrated.**

The same holding can be compressed:

- **AUTHORITY MUST PRECEDE BURDEN.**

- **INFORMATIONAL CUSTODY DOES NOT CREATE SUBSTANTIVE AUTHORITY.**
- **CONFIDENTIALITY MUST IDENTIFY ITS LEGAL RELATIONSHIP.**
- **COMPLAINT DOES NOT SUBSTITUTE FOR PROOF.**
- **INTEREST DOES NOT SUBSTITUTE FOR AUTHORITY.**
- **EQUALITY REQUIRES FUNCTIONAL COMPARATORS.**
- **FUNCTION MUST PRECEDE CONSEQUENCE.**
- **NO DOWNSTREAM CONCERN CAN SUPPLY A MISSING UPSTREAM PREDICATE.**

---

## XL. CONCLUSION

These five New Jersey cases do not need to become one lawsuit.

They benefit from one grammar.

1. *Heaps* presents an applied conflict among parent, child, school, and informational custody.
2. *Lema* traces that conflict upstream through state guidance and local implementation.
3. *Moms for Liberty* tests a specific district policy across notice, religious formation, speech, facilities, and informational control.
4. *Fellowship of Christian Athletes* tests equal access and religious association against differential school treatment.
5. *Ali* tests the outer territorial boundary of school-board authority over an adult citizen engaged in political and civic life.

Together they expose the complete public-school authority chain:

**PERSON**
**→ AGENCY**
**→ RELATIONSHIP**
**→ AUTHORITY**
**→ STEWARDSHIP**
**→ OBJECT**
**→ FIDELITY**
**→ PROVENANCE**
**→ INFORMATIONAL CUSTODY**
**→ NOTICE**
**→ DISCLOSURE / CONFIDENTIALITY**

→ **NEXUS**
→ **IMPAIRMENT**
→ **NECESSITY**
→ **ALTERNATIVE**
→ **EQUALITY**
→ **CONSEQUENCE**
→ **PROPORTIONALITY**
→ **REMEDY.**

Public authority remains legitimate when its source can be located, its object identified, its evidence traced, its information lawfully held, its function demonstrated, its comparators examined, its limits stated, and its consequences accounted for.

This structure does not diminish schools.

It distinguishes **stewardship from substitution, protection from preference, confidentiality from concealment, equality from ideological sorting, and governmental authority from governmental interest.**

Those distinctions permit public educational institutions to govern strongly where they possess authority and constitutionally where they encounter boundaries.

WHEREFORE, proposed Amicus respectfully requests that the Court permit filing of this brief, consider the framework according to the posture and claims of the individual matter before it, take judicial notice of the existence and published procedural posture of the related federal matters identified herein where appropriate, and grant such further relief as is lawful and proper.

Respectfully submitted,

**Brandon Michael Hayes**
Pro Se
President, Natural Law Institute
159 Indian Hill Street
West Newbury, Massachusetts 01985
brandon@hayeshaus.com
(617) 438-2049

Dated: September 14, 2026

---

**CERTIFICATE OF SERVICE**

I certify that on September 14, 2026, a true and correct copy of the foregoing **Motion for Leave to File Amicus Curiae Brief and Proposed Amicus Curiae Brief of Brandon Michael Hayes, Appearing Pro Se as President of the Natural Law Institute**, was served upon all counsel of record in the above-captioned matter by electronic mail and by such additional means as applicable to the filing procedure authorized by this Court.

Respectfully,

BH

Brandon Michael Hayes
Pro Se
President, Natural Law Institute

Dated: September 14, 2026

...S FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

...Retail
...OSTAGE PAID
P
$18.05
Origin: 01922
09/16/26
2410540922-12

PRIORITY MAIL®

0 Lb 8.30 Oz
RDC 03

EXPECTED DELIVERY DAY: 09/18/26

C034

SHIP TO:
RM 2020
402 E STATE ST
TRENTON NJ 08608-1500

USPS SIGNATURE® TRACKING #

9510 8114 0402 6259 0667 88

...RITY®
...AIL

- Expected de...
- Domestic sh... ...).*
- USPS Tracki... ...ional destinations.
- Limited inter...
- When used i... ...d.

*Insurance does n... ...the
Domestic Mail Mar... ...of coverage.
** See Internationa...

FLAT R...
ONE RATE ■

...e free Package Pickup,
...n the QR code.

TRACK...

...S.COM/PICKUP

PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

PAPER POUCH
how2recycle.info

FROM: Brandon Hayes
159 Indian Hill St
West Newbury MA 01985

RECEIVED
SEP 18 2026
...:30 ____M
CLERK, U.S. DISTRICT COURT - DNJ

X-RAYED

TO: Clerk's office
US District Courthouse
District of NJ
Clarkson S. Fisher Building & US Courthouse
402 East State St. Room 2020
Trenton NJ 08608

This package is made from post-consumer waste. Please recycle - again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.